# EXHIBIT C
# Part 6 of 6

18

BOARD OF PRISON TERMS                                                 STATE OF CALIFORNIA

# LIFE PRISONER: DOCUMENTATION HEARING (BPT §2269.1)

**BPT REPRESENTATIVE** _[signature]_

## SENTENCE INFORMATION

| OFFENSE (CODE SECTION AND TITLE) | CASE NUMBER | COUNT NUMBER |
|---|---|---|
| MURDER 1ST W/USE OF FIREARM PC187, PC12022.5 | SAC66618 | 2 |

| DATE RECEIVED CDC | MIN. ELIG. PAROLE DATE | EARLIEST MIN. ELIG. PAROLE DATE |
|---|---|---|
| 6-13-84 | 3-2-98 | |

| INITIAL HRG. SCHEDULED | PERIOD COVERED BY THIS HEARING | PRIOR DOCUMENTATION HEARING DATES |
|---|---|---|
| 10-94 | 5-26-87 TO PRESENT | 5-26-87 |

## INFORMATION CONSIDERED

| CDC 115 CHRONOS | | LAUDATORY CHRONOS | |
|---|---|---|---|
| | | DATE | CIRCUMSTANCES |
| ☒ DISCIPLINARY FREE | | | _In Progress Report of 6/93_ |
| ☐ MAJOR DISCIPLINARY (SERIOUS) | | | |
| ☐ MINOR DISCIPLINARY (ADMIN.) | | | |

| CDC 128 CHRONOS (NEGATIVE) | | CHRONOS — WORK, EDUCATIONAL, VOCATIONAL, ETC. | |
|---|---|---|---|
| DATE | CIRCUMSTANCES | DATE | CIRCUMSTANCES |
| | _In Progress Report of 6/93_ | | _In Progress Report of 6/93_ |

## INSTRUCTIONS TO CDC STAFF

DOCUMENTS STILL REQUIRED: _____

PSYCHIATRIC:

   REFER TO CATEGORY _____

   COMPLETE PRIOR TO _____

PLACE ON APPROPRIATE:

   ☐ LIFE PRISONER DOCUMENTATION CALENDAR

   ☒ LIFE PRISONER PAROLE CONSIDERATION HEARING CALENDAR

OTHER _____

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CRONK, DONALD | C-87286 | SAN QUENTIN | DOC | 6-10-93 |

278

BPT 1009 (REV. 4/86)                            PAGE 1 OF 2 PAGES                         PERMANENT ADDENDA

AFTER REVIEWING WITH THE PRISONER THE FACTORS WHICH MIGHT BE OF CONCERN AT HIS/HER INITIAL PAROLE HEARING, THE PANEL MADE THE FOLLOWING EVALUATIONS AND FUTURE RECOMMENDATIONS:

RE: VOCATIONAL TRAINING _Completed Voc Electric 1988._

RE: ACADEMICS _Attending College program now. Will continue towards AA._

RE: WORK RECORD _Outstanding work record._

RE: GROUP ACTIVITIES _Currently going to NA and attend several work shops._

RE: PSYCHIATRIC TREATMENT _No recommendations_

RE: PRISON BEHAVIOR _Clear record._

RE: OTHER _Continue present program_

| BPT REPRESENTATIVE SIGNATURE | DATE |
|---|---|
| | 6/10/93 |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CORNK, DONALD | C-87286 | SAN QUENTIN | DOC | 6-10-93 |

279

BPT 1009 (REV. 4/86)                    PAGE 2 of _2_ PAGES                    PERMANENT ADDENDA

19

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [x] DOCUMENTATION HEARING
- [ ] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

## INSTRUCTIONS

TO CDC STAFF:   DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF:   FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| YEAR | POSTCONVICTION CREDIT | | REASONS |
|------|------|------|---------|
| | BPT | PBR | |
| 6-25-90 to 6-25-91 | | | Cronk remained at San Quentin with Med A custody and he continues to program in the General Population. Cronk has satisfactorily performed all work and learning assignments in compliance with the Electrical Apprenticeship Standards. He has acquired over 8000 hours of related and supplemental instruction. Cronk has also acquired Advance Computer Programming skills. |
| 25-91 to 6-25-92 | | | Cronk continued to be housed at San Quentin with Med A custody. On 12-11-91 Cronk was assigned as the Disciplinary Clerk. He was responsible for setting up the computer programs that is used to log and track all serious disciplinary reports at San Quentin. Cronk continually receives acknowledgements of his excellent work ethics. Also included are numerous laudatory chronos and letters of appreciation from administrators, second & first line supervisors, officers, and respected community leaders. Most have directly supervised Cronk or closely monitored the quality of his work. Cronk has the reputation of volunteering for responsible leadership positions. He is described as a self starter who works well without supervision. On 12-21-91 Cronk participated in the Alternatives to Violence Project. |

CORRECTIONAL COUNSELOR SIGNATURE

V. Dobson, CCI                                         5/12/93                    DATE

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|-----------|-------------|----------|--------------|
| Cronk, Donald | C87286 | San Quentin | Doc | June 1993 |

PT 1004 (REV. 7/86)

PAGE 1 of 3

280

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| cont. | | | The workshop helped Cronk to further develop and explore effective ways of dealing with conflict. Once again Cronk was acknowledged by the facilitator for the caring and supportive manner in which be displayed his leadership abilities. |
| 6-25-92 to present | | | Cronk remained at San Quentin with Med A custody. On 5-28-92 Cronk was assigned as the Operations Clerk. Noted is a 9-9-92 CDC 128B which states that Cronk had failed to meet the expectation of a clerical worker in the unit. Cronk received rave reviews until an apparent personality clash resulted in conflict. |
| | | | On 9-11-92 the Watch Commander requested that Cronk be reassigned to the Service Unit. Cronk performs as both the Captain and Watch Commanders Administrative Assistant Clerk. |
| | | | Cronk continues to receive laudatory chronos for displaying a high standard of work ethics and continues to volunteer an enormous amount of personal time to various projects. On 5-9-92, the San Quentin Mass Choir recorded an album. Cronk was instrumental in the vision to create and direct this project. Cronk authored the line notes for the album cover, as well as using his electrical and sound engineering skills. |

**ORDER:**

☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

_____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| Cronk, Donald | C-87286 | San Quentin | Doc | June 1993 |

**281**

BOARD OF PRISON TERMS                                                                              STATE OF CALIFORNI

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| cont. | | | Cronk has remained disciplinary clear since his 1984 reception into CDC.  Cronk has established a healthy and stable family relationship with his wife and daughter, which remains intact. Cronk is a Christian and is very active in the prison ministry.  He expressed sincere remorse concerning his life crime and has made significant changes. |

**ORDER:**

- [ ] BPT date advanced by _____ months.
- [ ] PBR date advanced by _____ months.
- [ ] BPT date affirmed without change.
- [ ] PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

- [ ] Previously imposed conditions affirmed.
- [ ] Add or modify _____

- [ ] Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| Cronk, Donald | C-87286 | San Quentin | Doc | June 1993 |

282

BPT 1004 (REV. 7/86)                    PAGE ___3___ of ___3___                    PERMANENT ADDENDA

2c

CRONK, Donald   C-87286

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
JUNE 1993 LIFER HEARING
SAN QUENTIN STATE PRISON

**INTRODUCTION**: Mr. Cronk is a 38-year old, married, first termer, convicted of Murder 1st and received in the CDC 6/84. In the instant offense, Mr. Cronk, who was heavily dependent on cocaine at the time, planned with crime partners to rob a wealthy jewelry and coin dealer at his home. The victim arrived home, shot Mr. Cronk who had entered the home already to await the victim's return, and then was shot and killed by Mr. Cronk. Mr. Cronk, injured from being shot twice, escaped, recuperated in Las Vegas after seeking medical care there, and was finally arrested some nine months later in Idaho working for a travel-ling carnival. He remained in Sacramento County jail for some three and a half years prior to conviction and reception in the CDC.

**SOCIAL HISTORY**: Mr. Cronk was born and raised in a rural area of Wisconsin on a farm owned by his father. The family was quite poor and often burdened by financial pressures. Mr. Cronk has one older step-sister, one older sister and a younger brother; all of them are doing well and have remained in Wisconsin.

Mr. Cronk's mother was described as a sickly, neurasthenic, obese and chronically, mildly depressed woman who spent much of her time vegetating at home and being complaining and negativistic. Part of her problems may have resulted from the family's poverty and difficulty affording medical care for her ailments. However, these traits of lethargic pessimism, multiple physical complaints and withdrawn, depressive irritability are consonant with character traits common to many hypochondriacal, somaticizing individuals. Thus, her basic personality style was one that was difficult for others to enjoy or be with and consequently, Mr. Cronk spent much of his time avoiding being at home with her. Due to her miserable nature and sullen affectivity, the home was not characterized by much warmth, closeness, or communication. Mr. Cronk compensated for this lack of maternal nurturance by turning to his father, whom he idealized and admired for his hard work, skills as a tradesman, commitment to his family and the fact that he was willing to be a mentor and teacher to his son.

Mr. Cronk's father was a machinist and ran the family's small farm. To please his father and to aid him in his burden of work, Mr. Cronk worked hard on the farm and in the small engine repair business his father ran. As he looked up to his father, it was not difficult for him to devote much of his free time to working around the home. In addition, he felt a strong drive to lift his family and himself out of poverty and make something of himself. All of these factors played an important role in making Mr. Cronk a hard-working, driven and accomplishment-oriented individual from a very early age.

CRONK, Donald   C-87286          -1-          SQ BPT RPT    4/27/93   RB:jl

283

Mr. Cronk remembered that high school was not an enjoyable experience for him. His poverty and meagre circumstances, his shyness and concerns about his looks and his commitment to working for his father all resulted in a lack of deep involvement with his secondary education and he dropped out in his junior year to begin working. Around this time, his father died of a heart attack which devastated Mr. Cronk. His family remembers him withdrawing for a year. He then met a local girl, got her pregnant and they got married. Mr. Cronk continued to work and support his wife and child until the time they decided to move to California.

Mr. Cronk was 22 years old when they moved to the Sacramento area, and he began working for a waterbed retail outlet. He quickly moved up in the organization due to his hard work. His marriage began to falter and they were divorced three years into the marriage. The daughter from that union, Kirsten, is 16 years old and lives with his ex-wife.

In California, Mr. Cronk was introduced to cocaine for the first time and he states that the very first time he used the drug, he realized how good it made him feel. He began to use more and more, beginning a pattern of gradual deterioration and slide into criminality to support his steadily worsening habit. Around this time, he met an ex-convict who helped him plan and carry out a series of robberies that finally resulted in the commitment offense.

Prior to this involvement with cocaine, Mr. Cronk had no prior criminal record and did not show traits common to antisocial personalities. It is a testament to the possible powerful and destructive effects of drugs when they interact with an already existent personality structure that fits too well with the physical and psychological effects that the drug produces.

MENTAL STATUS: Mr. Cronk was amiable, cooperative and engaging in interview. He has a warm, caring and friendly personality that seems so discordant with the facts of his case. Other than an attempt to seek treatment for his cocaine addiction in 1980 when he was in crisis over his steadily worsening habit, Mr. Cronk has never sought psychological help. He has no history of mental illness, or use of psychiatric medication. He appeared eminently stable and psychologically intact in interview. Thought processes and emotions were all in order.

PROGRAMMING: Mr. Cronk has shown exemplary programming over the last nine years in the CDC. He trained in Vocational Electric for four years and reached journeyman's status. In 1988 he began working as a clerk on the Captain's Porch. He also worked for Associate Warden Nelson on the San Quentin Museum project and began to learn the use of computers. More recently, he has acted as a co-producer on the recent release of an album of music by the San Quentin Protestant choir. In 1987 he married a woman who had been a friend of his family back in Wisconsin. She is currently a CPA for a local medical firm. In 1991 she gave birth to their first child, a girl.

CRONK, Donald  C-87286          -2-        SQ BPT RPT   4/27/93  RB:jl

284

CONCLUSIONS: Mr. Cronk is one of those rare individuals who has been able to rise above his early circumstances and make something of himself in prison. He is well liked by staff and relied upon for his skills and trustworthiness. His strong religious values and supportive marital relationship should do him well as he nears parole consideration. Although psychological testing was not conducted as part of this evaluation, at the time of parole consideration, it is recommended that more in-depth testing be done to clarify Mr. Cronk's personality traits and in particular the level, if any, of still existent "Type-A" personality patterns which are a variant of obsessive-compulsive styles.

In general, Mr. Cronk is already showing much promise and readiness in these early stages of his commitment.


R. Bruce

RANALD BRUCE, Ph.D.
Staff Psychologist

CRONK, Donald  C-87286        -3-        SQ BPT RPT    4/27/93   RB:jl

285

21

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

## LIFE PRISONER: DOCUMENTATION HEARING (BPT §2269.1)

BPT REPRESENTATIVE    R. C. Schantel

### SENTENCE INFORMATION

| OFFENSE (CODE SECTION AND TITLE) | CASE NUMBER | COUNT NUMBER |
|---|---|---|
| Murder 1st /with Use. | | 2. |

| DATE RECEIVED CDC | MIN. ELIG. PAROLE DATE | EARLIEST MIN. ELIG. PAROLE DATE |
|---|---|---|
| 6/13/84 | 3/2/98 | |

| INITIAL HRG. SCHEDULED | PERIOD COVERED BY THIS HEARING | PRIOR DOCUMENTATION HEARING DATES |
|---|---|---|
| 2/97 | 6-13-84/present | 5/26/87 |

### INFORMATION CONSIDERED

| CDC 115 CHRONOS | | LAUDATORY CHRONOS | |
|---|---|---|---|
| | | DATE | CIRCUMSTANCES |
| ☑ DISCIPLINARY FREE | | 12/88 | Electrical Apprentice |
| ☐ MAJOR DISCIPLINARY (SERIOUS) | | | |
| ☐ MINOR DISCIPLINARY (ADMIN.) | | | |
| | | | |
| | | | |

| CDC 128 CHRONOS (NEGATIVE) | | CHRONOS — WORK, EDUCATIONAL, VOCATIONAL, ETC. | |
|---|---|---|---|
| DATE | CIRCUMSTANCES | DATE | CIRCUMSTANCES |
| | | 4/90 | Clerk - Grade 1 + 2. |
| | | | |
| | | | |
| | | | |
| | | | |

### INSTRUCTIONS TO CDC STAFF

DOCUMENTS STILL REQUIRED: _____

PSYCHIATRIC:

REFER TO CATEGORY _____

COMPLETE PRIOR TO  2/97 Initial Parole Hearing.

PLACE ON APPROPRIATE:

☑ LIFE PRISONER DOCUMENTATION CALENDAR

☐ LIFE PRISONER PAROLE CONSIDERATION HEARING CALENDAR

OTHER _____
_____
_____

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CRONK, DONALD | C-87286 | SAN QUENTIN | JUNE | 6/25/90 |

BPT 1009 (REV. 4/86)                    PAGE 1 OF ____ PAGES                    PERMANENT ADDENDA

286

AFTER REVIEWING WITH THE PRISONER THE FACTORS WHICH MIGHT BE OF CONCERN AT HIS/HER INITIAL PAROLE HEARING, THE PANEL MADE THE FOLLOWING EVALUATIONS AND FUTURE RECOMMENDATIONS:

RE VOCATIONAL TRAINING _Completed, Electrician, Trade 1988, 5000 hours. near Journeyman Level. Interested in Computer Training_

RE ACADEMICS _Completed GED._

RE WORK RECORD _Excellent Clerk._

RE: GROUP ACTIVITIES _Alcoholics Anonymous attended 1988-89._

RE: PSYCHIATRIC TREATMENT _No treatment needs._

RE: PRISON BEHAVIOR _Continue excellent conduct._

RE: OTHER _Prisoner wishes to remain at San Quentin due to excellent programming and family contacts._

BPT REPRESENTATIVE SIGNATURE  R.C. Schau [signature]

DATE  6-25-90

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|-----------|-------------|----------|--------------|
| CRONK, DONALD | C-87286 | SAN QUENTIN | JUNE | 6/25/90 |

BPT 1009 (REV 4/86)          PAGE 2 of ___ PAGES

PERMANENT ADDENDA

287

22

STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [ ] DOCUMENTATION HEARING
- [ ] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

**INSTRUCTIONS**

TO CDC STAFF:   DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF:   FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 5-27-87<br><br>to<br><br>6-12-88 | | | Cronk remained at SQ under Clo B custody in the general population with assignment in Vocational Electronic Data Pro. Cronk appeared at his Board of Prison Term Life Prisoner Documentation hearing on 5-26-87. The Board of Prison Terms recommended Cronk (1) continue Vocational Electronics Program (2) Upgrade vocational level possibly college level courses; (3) Continue excellant work record, remain disciplinary free, participate in self groups.<br><br>On 2-9-88 Cronk appeared before UCC for close custody review. Committee noted that Mr. J. Henderson, the Vocational Electronic instructor submitted a CDC 128D chrono which stipulates that Cronk has accrued 2,000 hrs. in an 8,000 hr. program, i.e. Indentureship for the International Brotherhood of Electrical workers (Union 551), in Santa Rosa, CA. Mr. Henderson indicated a need for reduction of Cronk's custody, in order to obtain the necessary work experience associated with the Indenture-ship Program. On 8-4-87 married Linda Hartman.<br><br>Received no disciplinary violations during this period.<br><br>Vocational Laudatory Chronos:<br><br>CDC 128B dated 2-2-88 J. Henderson, Instructor Vocational Electric, Requested custody reduction to obtain OJT offerred by IDL noting outstanding, performance, grades, attitude, initiative. CDC 128B dated 3-14-88 noting Subject on loan to Renovation (IDL) for the purpose of OJT. |

CORRECTIONAL COUNSELOR SIGNATURE
_Louis Wright_

DATE  6/11/90

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CRONK, DONALD | C-87286 | SAN QUENTIN | JUNE 1990 | |

BPT 1004 (REV. 7/86)                                 PAGE 1 of ____

BOARD OF PRISON TERMS

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 5-27-87<br><br>to<br><br>6-12-88 | | | 5-19-87 CDC 128B Voc Electrical Prog. requested retention at SQ to complete training to become Journeyman Electrician. He has 1081 hrs. in the 8,000 hr. course.<br><br>CDC 128B IDL commended for job on Renovation project as electrician in conjuction with assignment as Apprentice in San Quentin Vocational Electrical Program.<br><br>5-29-87 Competency Certificate for the program of electrical construction and maintenance.<br><br>Self Help: CDC 128B Community Resources Manager Denice Dull states Inmate Cronk was a member of San Quentin's Alcoholics Anonymous from 1-13-88 thru 6-15-88.<br><br>Academics: None |
| 6-13-88<br><br>to<br><br>6-12-89 | | | Cronk remained at SQ under Med A custody in general population with assignment in Vocational Electrical. He received an assignment change on 6-15-88 (IDL) renovation on loan in conjuction with trade to acquire on the job training in Renovation. Cronk appeared in UCC for transfer consideration. The transfer being considered is based on a major departmental population move. Committee elects to recommend retention due to renovation needs per memo dated 10-19-88 signed by CDW S. Cambra. On 1-18-89 the CSR endorsed San Quentin retention. Cronk appeared before UCC on 3-28-89 for program review and transfer consideration. Committee recommended transfer to Folsom. However on 4-11-89 the aforementioned recommendation was rescinded noting program considerations and his involvement in his Indentured Apprenticeship program. Committee notes that subject was previously assigned to the renovation crew |

**ORDER:**

☐ BPT date advanced by _____ months.        ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.        ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CRONK, DONALD | C-87286 | SAN QUENTIN | JUNE 1990 | |

BPT 1004 (REV. 7/88)          PAGE _____ of _____          PERMANENT ADDENDA

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 6-13-88<br><br>to<br><br>6-12-89 | | | and therefore retained at San Quentin in order to complete this important task.<br><br>Cronk was returned to the Voc Electric Shop where he performs with A and B grades having completed 3,577 of the 8,000 hour program to date, (6 of 12 certification units). Cronk's supervisor states that he is an excellant student that he helps instruct the newer students, and that he hopes to remain at SQ noting the possibility that the program may began teaching fiberoptics. Committee further notes the favorable chronos received assigned to Renovation and his Indentured Apprenticeship with the Marin, Sonoma, Lake and Mendocino Counties Electrical JATC.<br><br>Received no disciplinaries during this period.<br><br>Vocational laudatory: 1-10-89 Letter of Commendation.<br><br>Self Help: CDC 128B Community Resources Manager, Denice Dull states "Inmate Cronk was a member of San Quentin's Alcoholics Anonymous from 1-18-89 thru 6-29-89.<br><br>Academics: None |
| 6-13-89<br><br>to<br><br>present | | | Cronk remained at SQ under Med A custody in general population. He continued assignment in Vocational Electric. On 1-5-90 Cronk appeared before UCC for Annual review and transfer consideration. Committee recommended retention at San Quentin II noting San Quentin has a Voc EDP program and Cronk's continuing education in Voc Electric program. On 2-6-90 Cronk received a assignment change at his request to the Service Unit.<br><br>Received no disciplinary violations during this period. |

**ORDER:**

☐ BPT date advanced by _____ months.     ☐ BPT date affirmed without change.

☑ PBR date advanced by _____ months.     ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

_____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CRONK, DONALD | C-87286 | SAN QUENTIN | JUNE 1990 | |

290

BPT 1004 (REV. 7/86)

PAGE ____ of ____

PERMANENT ADDENDA

BOARD OF PRISON TERMS

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

STATE OF CALIFORNIA

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 6-13-89 | | | Self Help: 5-18-90 Memo from E. Smith, Chaplain for Missionary Fellowship. 5-18-90 Memo from E. Smith, Chaplain for Husband/Wife program. |
| to | | | Vocational laudatory chrono: 4-20-90 CDC 101 Work Supervisor's Report, Watch Cammander's Clerk 3rd/watch 3 months Asset to Supervisor, completes all tasks; typing, filing, word processing, & general clerk. |
| Present | | | 12-15-89 Letter from Joint Electrical Industry Training Program Fund. |
| | | | 12-15-89 Electrical Construction and Maintenance Apprenticeship - Certificate of Completion State of California Competency Based Training. |
| | | | 12-27-89 CDC 128B Electrical Foreman, Peter J. Szluk states Cronk is Indentured Electrical Apprentice with the I. B. E. W., Local 551, Santa Rosa Cronk has had extensive technical and national code training thru his assignment with SQ Vocational Electric program. He has been integral part of the IDL crew, working in all phases of electricity. "Cronk will become a top notch journeyman before release from prison and will have no problem obtaining employment either thru his union or independently." "I would not hesitate to hire Cronk at any time for any job required". |

**ORDER:**

☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

_____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME CRONK, DONALD | CDC NUMBER C-87286 | INSTITUTION SAN QUENTIN | CALENDAR JUNE 1990 | HEARING DATE |
|---|---|---|---|---|

PREPARED BY:
L. WRIGHT, CCI
*L Wright CCI*

REVIEWED BY:
P. WINNIE, CCII        **291**

BPT 1004 (REV. 7/86)

PAGE _____ of _____

PERMANENT ADDENDA

23

CRONK, Donald   C-87286

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
JUNE 1990 DOCUMENTATION LIFER HEARING
SAN QUENTIN STATE PRISON

This is the second report to the Board on this inmate since his
inception into San Quentin on August 21, 1984. The central file and
the medical/psychiatric records were reviewed, in addition to a 50-
minute interview with the inmate.

The patient's background has been adequately documented in a prior
psychiatric evaluation for the BPT on 5/14/87 by M. Roudebush, M.D.,
Staff Psychiatrist at San Quentin. There is thorough documentation
starting with the patient's birth in Milwaukee, Wisconsin on 12/20/55
with a detailed review of his childhood.

Inmate Cronk is somewhat remarkable inasmuch as since his arrival at
SQ he has not received a single 115.

A Mental Status Examination revealed a well-groomed, alert male, who
had a black beard. His thoughts were clear, with no difficulty
tracking ideas. He was aware of the scope of the examination. There
was no evidence of hallucinations, delusions or disordered sleep. His
memory for events both recent and remote was unimpaired. There were
no abnormal perceptions, no evidence of confusion throughout the
interview. The patient admitted that he was somewhat anxious, given
the status of San Quentin, namely the transition to a reception center
with the attendant uncertainties of his future within the contours of
the CDC.

Donald Cronk said that he had completed his apprenticeship as a
certified journeyman electrician on 12/15/89 and was indentured to the
Santa Rosa Electrician's Union, Local 551. He was trained within the
walls by this local. Additionally, he is an active member of
Alcoholics Anonymous.

Since his previous evaluation, he has married, his wife being the
general manager of an accounting firm in San Pablo. He has visits
from her five days a week. They have started a couple's group in the
Protestant church in which they are active.

He is planning to study electronic data processing, which he sees as
complementary to his electrical training.

IMPRESSION:   Axis I  No Diagnosis
              Axis II Drug Addiction, in remission (cocaine)


CRONK, Donald   C-87286        SQ        BPT Doc.        5/90        WCS:jl

Mr. Donald Cronk has used his time in prison in an exceptionally productive manner, having trained as a certified journeyman electrician, as well as his other activities.

The structure afforded by the prison may, in large measure, be responsible for the patient's continuing improvement. It is recommended that the inmate continue his present program as benefit is likely. The release date, timing and conditions of parole should be determined based on other than psychiatric conditions.

WILLIAM C. SULLIVAN, M.D.
Staff Psychiatrist

CRONK, Donald  C-87286      SQ      BPT Doc.      5/90      WCS:jl

293

24

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

## LIFE PRISONER: DOCUMENTATION HEARING (BPT §2269.1)
BPT REPRESENTATIVE

### SENTENCE INFORMATION

| OFFENSE (CODE SECTION AND TITLE) | | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|
| | | | |

| DATE RECEIVED CDC | MIN. ELIG. PAROLE DATE | EARLIEST MIN. ELIG. PAROLE DATE | |
|---|---|---|---|
| 6/13/84 | N/A | 11/8/95 | |

| INITIAL HRG. SCHEDULED | PERIOD COVERED BY THIS HEARING | PRIOR DOCUMENTATION HEARING DATES |
|---|---|---|
| 10/94 | 6/13/84 – Present | N/A |

### INFORMATION CONSIDERED

| CDC 115 CHRONOS | | LAUDATORY CHRONOS | |
|---|---|---|---|
| | | DATE | CIRCUMSTANCES |
| ☐ DISCIPLINARY FREE | | 8/13/86 | Good workers |
| ☐ MAJOR DISCIPLINARY (SERIOUS) | | | |
| ☒ MINOR DISCIPLINARY (ADMIN.) | | | |

| CDC 128 CHRONOS (NEGATIVE) | | CHRONOS — WORK, EDUCATIONAL, VOCATIONAL, ETC. | |
|---|---|---|---|
| DATE | CIRCUMSTANCES | DATE | CIRCUMSTANCES |
| | | 3/31/87 | A & B's in Voc Electrics |
| | | 1/2/87 | Good comments as Voc Elect |
| | | 9/30/86 | A & B's in Voc Elec |
| | | 6/30/86 | B grades in Voc Elect |
| | | 11/20/84 | Excellent report as laundry worker |

### INSTRUCTIONS TO CDC STAFF

DOCUMENTS STILL REQUIRED:

PSYCHIATRIC:

REFER TO CATEGORY    Retain Psych referral

COMPLETE PRIOR TO

PLACE ON APPROPRIATE:

☒ LIFE PRISONER DOCUMENTATION CALENDAR

☐ LIFE PRISONER PAROLE CONSIDERATION HEARING CALENDAR

OTHER    See attached BPT 1004 dated 4/1/87 & psych
report of 5/14/87

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| CRONK | C-87286 | SQ | 5/87 | 5/26/87 |

BPT 1009 (REV. 4/86)              PAGE 1 OF ____ PAGES                    PERMANENT ADDENDA
294

AFTER REVIEWING WITH THE PRISONER THE FACTORS WHICH MIGHT BE OF CONCERN AT HIS/HER INITIAL PAROLE HEARING, THE PANEL MADE THE FOLLOWING EVALUATIONS AND FUTURE RECOMMENDATIONS:

RE: VOCATIONAL TRAINING  _Voc Electronics   He is doing well in this program_

RE: ACADEMICS  _Has GED. Is learning in Voc Electronics. Possibly AA degree in Electronics might be pursued._

RE: WORK RECORD  _Currently good attentions in Voc/Elec program_

RE: GROUP ACTIVITIES  _Is in T.M.  Feels it will be beneficial for him._

RE: PSYCHIATRIC TREATMENT  _Psych report of 5/14/87 is basically positive_

RE: PRISON BEHAVIOR  _To remain disc free_

RE: OTHER  _____

BPT REPRESENTATIVE SIGNATURE

DATE

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|-----------|-------------|----------|--------------|
| CRONK | C-87286 | SQ | 5/87 | 5/26/87 |

BPT 1009 (REV 4/86)                PAGE 2 of ____ PAGES                PERMANENT ADDENDA

295

25

BOARD OF PRISON TERMS

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

STATE OF CALIFO.

XX☒ DOCUMENTATION HEARING

☐ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

## INSTRUCTIONS

TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINAL
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 243

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 6/13/84<br><br>to<br><br>6/12/85 | | | Cronk was received at NRC-CMF on 6/13/84 for Initia Classification.  He was subsequently transferred to San Quentin and placed in MCU under Close B custody.  On 8/21/84 he was placed in the San Quentin General Population under Close B custody. On 9/1/84 he was assigned to Industries.  On 10/6/84 he was reassigned to the Laundry and was graded as an exceptional worker on CDC 101.  Betwee 1/11/85 and 3/28/85, Cronk was out to court twice and was returned to the San Quentin General Population and reassigned to the Laundry both times He did not participate in any self-help group, nor did he receive any laudatory chronos during this period.<br><br>Disciplinary history:<br><br>Clear. |
| 6/13/85<br><br>to<br><br>6/12/86 | | | He remained at San Quentin under Close B custody in the General Population.  He continued his assignment in the Laundry, but was not graded. Between 12/11/85 and 4/24/86 Cronk was in and out o the institution and local hospitals in addition to being medically unassigned for an acute cervical disc disease.  On 4/24/86 he was assigned to Vocational Electric.  During this period, his assignment was not graded, he received no adverse or disciplinary chronos, no laudatory chronos, nor did he participate in any self-help groups. |

CORRECTIONAL COUNSELOR SIGNATURE

*J. Clarke*                                    J. Clarke, CCI                DATE  4/1/87

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DA |
|---|---|---|---|---|
| CRONK<br>*G. Harris*<br>G. Harris, CCII | C-87286 | SQ | 5/87 | |

BPT 1004 (REV 7 88)

PAGE 1 of 2

296

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 6/12/86<br><br>to<br><br>Present | | | He remained at San Quentin under Close B custody in the General Population. He continued his assignment in Vocational Electric and was graded above average. On 8/13/86 he was accepted into the Electrical Indentured Apprenticeship Program. On 12/2/86 he was temporarily assigned to the Renovation Crew, then reassigned to Vocational Electric on 12/13/86. He did not participate in any self-help groups during this period. He received a laudatory CDC 128-B on 8/13/86 for excellent work habits and acceptance into the apprenticeship program.<br><br>Disciplinary history:<br><br>Clear. |

**ORDER:**

☐ BPT date advanced by _____ months.   ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.   ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DA |
|---|---|---|---|---|
| CRONK | C-87286 | SQ | 5/87 | |

BPT 1004 (REV 7/86)

PAGE __2__ of __2__

PERMANENT ADDEND

297

26

CRONK   C-87286

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
JUNE 1987 DOCUMENTATION LIFER CALENDAR
SAN QUENTIN PRISON

This is the first psychiatric report to the Board of Prison Terms for this inmate.

Evaluation is based upon approximately nine psychotherapy sessions between December '84 and July of '85, plus a current review of the records and a single, individual interview scheduled for preparation of this report.

Significant past history indicates Cronk had a close, supportive relationship with his father, and a somewhat distant relationship with limited communication with his mother. Mr. Cronk became bored and dropped out before finishing high school. He tended to be hyperactive. He was quite successful at work, progressed rapidly to positions of responsibility prior to becoming addicted to cocaine. He married early and began to feel burdened by the responsibility. In retrospect, he states his intellectual development outpaced his emotional development. Intellectually, he was able to handle the responsibilities of his jobs and wanted the responsibility, but on the other hand, he wanted to "goof off." He had tried a variety of drugs, none of which had any special appeal until he tried cocaine at the age of 23. "I liked it, it made me feel more outgoing, more energy." Within a year and a half after starting to use cocaine, he had lost his job, his family and his self-respect and resorted to crime to support himself and his habit. In 1978, soon after the death of his father, he felt overwhelmed with the futility of his life, and attempted suicide with an overdose of aspirin. He felt there were, "tons and tons of pressure on me." With his father no longer there, "to keep me in line," it seemed "an easy way out."

For interview, Mr. Cronk was on time and appropriately groomed. He presented in a friendly, open, spontaneous manner. Thoughts were organized and goal directed. There was a healthy level of spontaneous elaboration in all areas to which the discussion led. He discussed the commitment offense freely, everything was planned, "but the killing." He feels sure he would not have participated in a crime if he had been able to see the killing as a possible outcome. He, himself was being shot and "responded out of reflex, fear." Soon after the offense, he consulted a lawyer and was told he was facing a death penalty. He chose to remain on the run. Eventually, when arrested, he promptly pled guilty to 1st degree murder, then remained in the county jail approximately three and a half years, while he fought the district attorney's insistence upon the death penalty. During this three and a half years, he engaged in a lot of self-examination and made a 'sort of peace with himself, accepting that he would be executed."

While in the county jail, he heard many rumors and reports of prison life. When he arrived in CDC, he was "scared to death." He tried to

CRONK  C_87286     JUNE 1987 DOCUMENTATION      SQ     5/14/87  MER:jl

298

CRONK  C-87286
June 1987 Documentation
Page 2

PC. He is now glad it didn't work. He gradually learned getting along in prison is "all on you." And he has, "not had a lick of trouble." He is now involved in an electrical trade and likes it very much. He feels, "real good," at times about the ease with which he learns things that once tended to overwhelm him. During the past year, he has developed a relationship which he thinks will lead to marriage. He feels a great deal of support in the relationship and has been able to share things with her that he has never talked with anyone about.

MENTAL STATUS: Cronk is correctly oriented in all spheres and reveals no disorder of thought or affect. Intelligence is estimated as above the normal range. With respect to drugs, he states, "I killed a person because of cocaine, I wouldn't want to involve myself in it again."

DIAGNOSIS:  Axis I  -  No psychiatric disorder
            Axis II -  Drug addiction, cocaine (in remission)

CONCLUSIONS: this man gives evidence of considerable introspection and emotional growth, since the commitment offense. He displays a wide area of identification with positive social values. Violence potential is seen as less than average for this population.

RECOMMENDATIONS TO CLASSIFICATION COMMITTEE: Continue support of positive programming and the use of self-help groups.

M.E. ROUDEBUSH, M.D.
Staff Psychiatrist

CRONK  C-87286        JUNE 1987 DOCUMENTATION      SQ    5/14/87 MER:jl

299

25

In and for the County of Sacramento

DEPT. SIX    NUMBER    66618

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                    Plaintiff

                    vs.

DONALD  EVERETT  CRONK
                                    Defendant

Age 28   D.O.B. 12/20/55

TO THE ABOVE ENTITLED HONORABLE COURT:

            Pursuant to statute and the direction of this Court, the Probation Officer hereby respectfully

submits the following report and recommendation:

after the defendant plead GUILTY to

the charge of violation of Section 197(a) of the Penal Code (Murder, 1st
Degree) and admitted violation of Section 12022.5 of the Penal Code (Use
of a Firearm) as alleged in Count One of the Information.

The District Attorney's motion to strike the special circumstances in
Count One and dismiss Counts Two and Three of the Information alleging
violation of Section 211 of the Penal Code (Armed Robbery) and 459 of
the Penal Code (Burglary, 1st Degree) and the allegations pursuant to
violation of Section 12022.5 of the Penal Code (Use of a Firearm) was
taken under submission by the Court.

The Plea was recommended by the District Attorney.

| | |
|---|---|
| DATE COMMITTED | December 19, 1980 |
| DATE ARRESTED | July 1, 1981 |
| INFORMATION FILED | August 11, 1983 |
| REFERRED TO PROBATION OFFICER | March 23, 1984 |
| REPORT FILED | May 21, 1984 at 9:00 a.m. |

ATTORNEY: R. Fathy          DISTRICT ATTORNEY: G. Williamson

Tachments:

| | | | | | | |
|---|---|---|---|---|---|---|
| 20.5 Credits | ☒ | C. I. I. | ☒ | 1170 P. C. Worksheet | ☒ | 300 |
| bation Costs | ☐ | D. M. V. | ☐ | Other | ☐ | |

Court No.: _____ 66618
CII NO.: _____ A07051
FBI NO.: _____ 027700
Soc. Sec. No.: _____ 395-64
Drivers License No.: N07896
Booking Agency & No.: SSO:28
Probation No.: _____ A-98,3

## PERSONAL HISTORY

(Mr.)
~~(Mrs.)~~
Name: ~~(Miss)~~ Donald Everett Cronk _____ AKA _____

Age: 28 DOB 12/20/55 Birthplace: Milwaukee, Wisconsin

Address: Sacramento County Jail _____ Phone: --

Ht.: 5'11" WT.: 150 Eyes Blue Hair: Brown Race: Caucasian

Resides with: Parents ☐   Parent & Step-Parent ☐   Spouse ☐   Friend ☐

Self ☐   Other XX   Jail

Father: Donald Ellsworth Cronk Address: Deceased

Mother: Marilyn Cronk Address: 370 N. Tratt St.,Whitewater,

Wife ~~Husband~~ Mary Kreil       1973       Divorced   One: 7 years
Previous          NAME          DATE OF MARRIAGE   STATUS   CHILDREN & AGES
Marriage: _____
Previous          NAME          DATE OF MARRIAGE   STATUS   CHILDREN & AGES
Marriage: _____
                  NAME          DATE OF MARRIAGE   STATUS   CHILDREN & AGES

Total No. of Marriages: One   Total No. of Children: One

Closest Other Living
Relative or Friend: Mother _____ Address: See above

Child support through None   Paying ☐   Delinquent ☐

Source of Income: None   Rec. ☐ _____ Amt. per month. _____

                                        Amt. per month. _____

Military branch: N/A _____ Rank: _____ Ser. No.: _____

Date of service: _____ to _____ Discharge: _____ Verified: _____

Level of school: 11th Grade _____ Advanced schooling: GED
                 HIGHEST GRADE                                    HIGHEST LEVEL AND WHERE

Occupational or Professional skills: Service Manager

| EMPLOYER | ADDRESS | OCCUPATION | MONTHLY EARNINGS | DATES |
|---|---|---|---|---|
| LaBries Waterbeds | Sacramento,CA | Service Manager | $1,800 | 1977 – 1980 |
| Jason & Sons | Sacramento, CA | Warehouse Manager | -- | 1976 |

301

## I.  PRESENT OFFENSE:

Details of this offense are taken from Sacramento County Sheriff's Department Offense Report #80-94904 and from the transcripts of the Preliminary Hearing held July 26th, 27th, 28th and 29th, 1983, in Department O of the Sacramento County Municipal Court.

On December 19, 1980, at approximately 8:00 p.m., officers were called to the residence of James Allen, 652 Woodside Sierra, Apt. #4. It was discovered that the 50 year old victim, James Allen, had been shot and killed. The victim was the owner and operator of the Allen Coin Shop at 6448 Fair Oaks Boulevard in Carmichael, California. He was found by his son-in-law, Paul Verigen.

Mr. Allen and Mr. Verigen, who was employed at the Allen Coin Shop, left the shop together on the evening of December 19, 1980. Mr. Allen drove his car and Mr. Verigen drove a car belonging to Mrs. Allen, who was in Oregon visiting relatives. Mr. Allen went directly to his residence, but Mr. Verigen stopped at a service station en route and did not arrive at the victim's home until approximately ten to twenty minutes after Mr. Allen's arrival.

When Mr. Verigen opened the front door, he found Mr. Allen lying face up on the floor. He appeared unconscious. Mr. Verigen immedately noticed that the rooms had been ransacked and assumed that Mr. Allen had surprised the culprits as the patio door was broken and pieces of

-3-

302

I.   PRESENT OFFENSE:    (Continued)

loose glass were still falling to the floor.  Mr. Verigen left and hailed the apartment security guard who called an ambulance and notified Sheriff's officers.  Responding personnel determined that Mr. Allen had been shot and was dead.

Subsequent examination by the Coroner revealed that he had been shot in the posterolateral left chest in the posterior axillary line.  The bullet enter seven inches from the posterior midline and two and a quarter inches below the nipple line.  The track extended inward from left to right and slightly from back to front.  It entered the lower lobe of the left lung and travelled to the descending thoracic aorta. It totally shattered the aorta in a large 3/4 inch irregular hole and the slug continued into the lower portion of the third dorsal spine.  The slug was recovered.  The pathologist testified that the victim bled to death within three to six minutes.

Officers determined that there were no other occupants in the apartment.

Three upstairs bedrooms and the living room had been ransacked.  A wood "club" approximately four feet long and one and one half inches thick was lying on the lower stairs.  There were two bullets holes in the upper left corner of the sliding glass door and in an adjacent storage shed. There was also a bullet hole in the louvered door of the dining

T. E. KELDGORD
TION OFFICER
MENTO COUNTY
LIFORNIA

303

I.  PRESENT OFFENSE:   (Continued)

room and in the north living room wall.

Examination of the victim revealed he had a gun holster in his right front pants pocket but the gun, subsequently determined to have been a .38 caliber Smith-Wesson was missing.  A briefcase, which would have been carried into the house by the victim, was missing as was the victim's diamond ring.  This ring was described as containing a 3.88 carat diamond valued at approximately $33,000.00.  The briefcase contained numerous gold and silver coins, gold jewelry and diamonds.  The gold and silver were valued in excess of $49,000.00.  The total value of the missing items was determined to be in excess of $100,000.00.

Further examination of the victim revealed a billfold in his right rear pants pocket which contained $37.00 and a Derringer pistol loaded with two .22 magnum rounds.  A gray box lying near the victim's foot contained in excess of $10,000.00 in cash and another loaded two shot Derringer.

On December 23, 1980, officers received information from an informant that Glenn (Butch) Meyer had been plotting with a relative, in the Summer of 1980, to rob a coin dealer of a large ring.  Because of the relative's incarceration the plans had to be postponed.  The relative told the informant, on the day of the offense, to watch the evening news and he would learn that Mr. Meyer had carried out the plan with a companion who had been shot by the victim.  It was also

IRT E. KELDGORD
BATION OFFICER
IAMENTO COUNTY
CALIFORNIA

304

I.  PRESENT OFFENSE:   (Continued)

reported that Mr. Meyer had a .38 caliber revolver that he had used in several robberies.

On January 5, 1981, Irene Kind, the mother of Jeannie Smith, aka Meyer contacted Sheriff's officers and told them the details of the offense as related to her by her daughter. She implicated Glenn Meyer, Donald Cronk and Terry Warren. Mrs. Kind further confessed that her daughter had given her a plastic bag that reportedly contained Donald Cronk's blood stained clothing. She took it to an area beyond El Dorado Hills, poured gasoline on it and set it on fire. Mrs. Kind turned over to Sheriff's officer a packet containing gold coins and unset diamonds that were identified as having been taken from Mr. Allen. She related that Donald Cronk had been shot by the victim at the time of the offense and had given the packet to her daughter for treating his wounds.

Glenn Meyer, Jeannie Smith aka Meyer, and a female juvenile were arrested on January 6, 1981. Terry Warren subsequently surrendered himself to the Sacramento County Sheriff's Department officers on June 9, 1981, and Donald Cronk was arrested in Idaho by the FBI on July 1, 1981.

The following scenario of the offense was subsequently developed:

Sometime in the Summer of 1980, Glenn Meyer became aware that James Allen was wearing a ring that contained a

-6-

305

I.  PRESENT OFFENSE:    (Continued)

large diamond.  On various occasions, he discussed the possibility of robbing Mr. Allen and taking the ring.  These discussions were with several people including Charles Lovely, Donald Cronk and Terry Warren.  The discussion finally evolved into a plan to rob Mr. Allen in his own home.  On the day prior to the offense, Glenn Meyer, Donald Cronk and Terry Warren followed the victim home from his place of employment in order to learn where he lived.  Mr. Cronk and Mr. Meyer planned to enter the residence and wait for the victim to come home.  They would be alerted to the victim's arrival by Terry Warren.  They then intended to accost the victim, tie him up and remove his ring.  A pair of gloves, cord and a bottle of baby oil were purchased to help them to carry out the plan.  The baby oil was to lubricat the victim's finger if it was difficult to remove the ring.

In the early evening of December 19, 1980, Donald Cronk and Glenn Meyer went to the victim's residence.  Mr. Cronk removed a screen from a window, opened the window and entered the apartment.  He then opened the front door to allow Mr. Meyer to enter.  They then ransacked the house while waiting for Mr. Allen's return.  They were not concern- ed about being surprised by the victim's arrival as Christmas bells were hanging on the front door.

When Mr. Allen arrived at his residence, however, he some how became aware that something was amiss.  He entered

ITE KELLOGG
ATION OFFICER
MENTO COUNTY
LIFORNIA

306

I.   PRESENT OFFENSE:     (Continued)

quietly, with his pistol drawn. Exactly what happened after that is unknown but it appears that Mr. Meyer was at or near the foot of the stairs with the wooden club in his hand when he was confronted by the victim.  Mr. Cronk was in the kitchen and came out when he heard noises.  Mr. Allen turned and fired at Mr. Cronk.  Mr. Cronk suffered at least two gunshot wounds, one to the left side in the area of his ribs and one to his left arm.  The bullets passed through his body without lodging there and did not hit any vital organs.  Mr. Allen was struck with the shot that killed him.  The two culprits fled but Mr. Meyer apparently stopped long enough to pick up the victim's gun, briefcase and diamond ring.  He fled to his truck, which was parked nearby then stopped and picked up Mr. Cronk on an adjacent street.  Mr. Cronk had disposed of his gun, described as a .38 caliber Colt Detective Special in some near-by bushes.  The victim's gun was also thrown away.

On January 25, 1981, a five year old found a .38 caliber Colt Detective Special in some bushes behind her grandparents' apartment.  This gun was believed to have been the gun used by Mr. Cronk.  It had three live rounds and three spent rounds.  Unfortunately that gun was subsequently disposed of, making exhaustive tests for bullet comparison impossible.

On May 5, 1982, a .38 caliber Smith-Wesson was

EHT E. KELDGORD
RATION OFFICER
RAMENTO COUNTY
CALIFORNIA/

I.   PRESENT OFFENSE:    (Continued)

found by children playing under a bridge on Winding Creek.
That gun was identified by serial number as belonging to
James Allen.

Mr. Meyer, phoned his residence and contacted
Terry Warren.  Arrangements were made to take Mr. Cronk to
Mr. Warren's house.  They were joined there very shortly by
Jeannie Meyer and the female juvenile.  Mr. Cronk's wounds
were bandaged.  A short while later, Charles Lovely delivered
Mr. Allen's briefcase to the Warren residence.  The three
men, Mr. Meyer, Mr. Warren and Mr. Lovely examined the
contents of the briefcase and discussed plans for selling
the items in Los Angeles and Las Vegas.  They also examined
Mr. Allen's ring and Mr. Lovely told them that he would have
difficulty disposing of it in Sacramento and suggested that
they try to sell it in Las Vegas.  Terry Warren gave Mr.
Lovely two $500.00 bills and some diamonds.  Those items
were taken from Mr. Allen's briefcase.

Three days later, Mr. Meyer and Mr. Warren put
Donald Cronk in the back of the pickup and the three left
for San Francisco, then San Jose.  From San Jose, they
apparently travelled to Los Angeles and then to Las Vegas
where arrangements were made to fly a doctor from New
Jersey to Las Vegas to treat Mr. Cronk's injuries.  They
reporteldy paid $1,000.00 for the doctor's services.  During
part of their travels the men were joined by Jeannie Meyer

308

I.   PRESENT OFFENSE:   (Continued)

and the female juvenile.  Witnesses at the various hotels and motels were able to identify pictures of the various participants except Mr. Cronk.  He apparently was bedridden and/or confined to the room due to his injuries.

On January 6, 1981, Glenn Meyer returned to Sacramento as he was due to appear in Court the following day.  Officers arrested Mr. Meyer and the female juvenile outside the Meyer residence.  Jeannie Meyer was then arrested.

When questioned by officers, Jeannie Meyer reported that her husband and Donald Cronk were stealing merchandise from LaBries Warehouse where Donald Cronk was employed.  He would then juggle the books to show that the merchandise had been sent to a different store.  Mr. Cronk got fired as the result of getting a dent in the company truck.  He then wnet to Wisconsin to visit his family in August of 1980.  Mr. Cronk returned to Sacramento in November of 1980, and he and Mr. Meyer were committing armed robberies of liquor stores and bars.  Terry Warren was the driver of the getaway car.  They then made plans to rob Mr. Allen as outlined above.

Mr. Meyer confirmed his wife's statements and indicated that his life had been saved by Mr. Cronk.  Mr. Meyer believed that the victim intended to shoot him but turned away when Mr. Cronk appeared and exchanged shots with Mr. Cronk instead.

On July 8, 1981, Donald Cronk, using the name of

-10-

I.  PRESENT OFFENSE:   (Continued)

Donald Allen Palmer was arrested by FBI agents at the Inland Empire Carnival in Rupert, Idaho. He was arrested on a warrant from Wisconsin alleging several robberies. Mr. Cronk was not formally questioned but stated "what happened in Wisconsin was just kid stuff". He did that because he was desperate and needed money. He stated that he shot the man in California because the man first shot him. The bullet knocked him to the floor and then the man shot him again. He stated that after being shot at the second time, he pulled the .38 caliber revolver from his pocket and fired back.

Co-defendants

There were no co-defendants charged in the Information, however, there were others involved. Terry Dean Warren entered a plea of guilty to violation of Section 32 of the Penal Code (Assessory to a Felony). He was scheduled to appear for Judgment and Sentence on October 20, 1981, and since that time sentencing has been postponed until after Mr. Warren testified in the matter of Donald Cronk.

No charges were filed against Jeannie Smith aka Meyer in return for her cooperation. The female juvenile was taken to the Neighborhood Alternative Center as a runaway.

Glenn Edward Meyer pled guilty to violation of Section 187 of the Penal Code (Murder, 1st Degree) and admitted the armed allegation pursuant to Section 12022(a) of the Penal

-11-

310

I.   PRESENT OFFENSE:   (Continued)

Code. He further admitted a prior prison commitment of December 29, 1975. On December 15, 1981, he was sentenced to state prison for one year for the armed allegation, one year for the prior prison term and twenty-five years to life for murder.

II.   DEFENDANT'S STATEMENT:

When interviewed at the Sacramento County Jail, the defendant presented a copy of a letter dated March 27, 1984, directed to Judge Phillips. He requested that the letter be included in his report as part of his statement of the offense. Please refer to that letter which is attached to this report.

The defendant stated that the whole incident was because of his involvement with cocaine. He stated "Cocaine destroyed me". He had a good job with possibilities of advancement then began using cocaine. He was in debt approximately $10,000.00 and lost his job because he couldn't even coordinate his thoughts anymore. He became involved with cocaine through his job associates then became involved with Mr. Warren and Mr. Meyer through the cocaine dealing.

Mr. Cronk claims that Terry Warren was the main force behind the entire crime. He told them about Mr. Allen

RT E. KELDGORD
PATION OFFICER
AMENTO COUNTY
CALIFORNIA

311

II.  DEFENDANT'S STATEMENT:   (Continued)

and wanted to rob the victim. The defendant suggested that

they burglarize his residence instead. They agreed to do

that and he broke into the residence through an unlocked

window then let Mr. Meyer in the front door. Mr. Warren

stayed outside and was to warn them if the occupant returned

home. Mr. Cronk stated that he was in the kitchen and

Mr. Meyer was upstairs. Mr. Cronk heard some thuds and opened

the sliding door in the kitchen and saw Mr. Meyer standing

on the stairs with the victim facing him, his back toward

the defendant. Mr. Allen turned immediately and shot the

defendant in the left arm. Mr. Cronk stated that he panicked

and headed toward the door, then was hit in the side. He

drew his gun and fired as he fled and expected to be shot as

he ran down the sidewalk. He was bleeding profusely and

lay down in some high grass across the street from the

apartment complex. A short while later, Mr. Meyer came by

in his truck, picked him up and took him to Terry Warren's

house. He stated that things after the offense are very

blurred as he was in a great deal of pain. Mr. Meyer, however

told him that he (Mr. Cronk) had shot the victim. He believed

for a long time that he had shot the victim until they found

that the bullet in the victim did not necessarily match the

one in the gun that he used. He now believes that either

Mr. Meyer or Terry Warren also had a gun and further believes

that Mr. Warren told the victim, for reasons unknown, that he

IRT E. KELDOORD
ISATION OFFICER,
RAMENTO COUNTY,
CALIFORNIA

312

II.   DEFENDANT'S STATEMENT:    (Continued)

and Mr. Meyer were in the house. When Mr. Allen came in, he came in with his gun drawn and prevented the bells on the Christmas wreath from ringing when he opened the door.

Mr. Cronk expressed deep regret for his actions and stated that he is deeply sorry for the victim and his family and the grief he has caused them. He stated that he knows what they are experiencing because he experienced the same kind of grief when his own father died. He has disgraced his family. Everyone who has known him is shocked by the charges and he feels that his friends have disowned him since the offense. He acknowledged his culpability, however, and stated that he was ready to pled guilty at arraignment but the District Attorney would not accept his plea and filed an amended complaint alleging special circumstances. He has been fighting the charges ever since as he feels, despite his plea, that he is really only guilty of second degree murder.

III.   THE VICTIM:

Victim's Notification

The victim's wife, Virginia Allen, was provided notice by mail of the time, date and place of the defendant's hearing and with information concerning the victim's rights to civil recovery and restitution fund compensation.   She

-14-

313

III.  THE VICTIM:    (Continued)

indicated that she does intend to be present for the hearing

and does want to make a statement.

### Victim's Statement

This officer talked with Mrs. Allen by telephone.

She indicated that there is no way she can describe her

feelings when the offense occurred.  Her home has been

desecrated, her privacy violated and her husband killed.  At

the time she left to visit relatives, she had everything to

live for but returned to nothing.  She feels that the

defendant killed her at the same time he killed her husband

but she is still here trying to cope.  Mrs. Allen and the

victim would have celebrated their wedding anniversary the

day after the offense and rather than him joining her and

relatives for Christmas they were burying him the day before

Christmas.

Mrs. Allen stated that the loss to herself and

the family is incalculable.  Her phsyical health has been

affected and in addition she has had to obtain counseling

just to be able to cope with the situation.  Other members

of the family have also been strongly affected emotionally

and financially by the death.  Her daughter and son-in-law

went into a different business and are now living out of

state.  She does not get to see her granddaughter as much as

she would if they were still in the area.  The granddaughter,

of course, is deprived of ever knowing her grandfather and

314

III.   THE VICTIM:   (Continued)

also of inheritance that her grandfather probably would have arranged for her.

Mrs. Allen states that she has felt that she is as much in prison and isolated as is the man who committed the offense. She felt that she was residing in one of the most protected areas available in the community. She now feels there is no safety anywhere. She has not been able to discuss her feelings with her friends as talking about the incident seems to frighten them. She is concerned about her youngest daughter who has not been able to express her emotions.

Mrs. Allen stated that she is not a revengeful person and has mixed feelings as to his sentence. She wants to be able to forgive so she can let go of her anger and hurt and go on with her life. She objects to the sentence he will get, however, as he is the one who actually killed her husband.

Victim's Loss

Mrs. Allen stated that there is no way to calculate the full extent of monetary loss. In addition to the items stolen by the culprits, she has lost her husband's support and was totally dependent on him for support. She no longer has health insurance, is not old enough to qualify for widow's social security and is experiencing financial difficulties.

On October 6, 1981, Mr. Verigen, the victim's

-16-

III.  THE VICTIM:    (Continued)

son-in-law, reported to the probation officer that Mr. Allen's

stolen briefcase contained a number of varied gold coins

and jewelry items. Some of the items were "one of a kind" and

were, therefore quite valuable. The gold and jewelry were

valued in excess of $50,000.00. In addition, there were

a number of unmounted diamonds of unknown value in the

briefcase. The victim's diamond ring, taken from his finger,

was valued at approximately $40,000.00. Only a few of the

gold coins and a necklace were recovered by Sheriff's

officers.

IV.  CRIMINAL RECORD:

Prior Convictions

The defendant's CII Arrest Record #A07051203 is

attached for the Court's information. Additional information

has been received from FBI Record #0277006P5 and from

Wisconsin Arrest Record #WI013035Y.

September 11, 1975, Theft from a Car, Waukesha,

Wisconsin PD Rpt. #75-1833-1835: The defendant, on

September 10, 1975, entered an automobile and removed a

cassette tape player and three cassette tapes. Also

implicated in the offense were three juveniles. They had

all been entering automobiles and removing items.

RT E. KELLOGGORD
ATION OFFICER
AMENTO COUNTY
ALIFORNIA

IV.  CRIMINAL RECORD:   (Continued)

Disposition:   December 9, 1975, pled guilty, $200 fine plus costs or 60 days in the county jail.

### Prior Arrests

July 16, 1981, Three Counts of Robbery, Whitewater Wisconsin PD:   On December 11, 1980, a man, subsequently identified as Donald Cronk accosted the employees of Hardees' Restaurant at 3:30 a.m. as they were closing.  He wore a ski mask and pointed a dark colored gun at the employees.  He demanded that they all lay down on the floor and that they give him the money.  He was given the restaurant's night deposit bag which contained $2,300.00.  On October 30, 1980, the clerk at the Whitewater Quick Stop Market was approached by a man, identified as Donald Cronk, who pointed a gun at her and ordered her to lay on the floor.  He then removed $360.00 from the cash register and fled.  On November 12, 1980, a man, identified as Donald Cronk, approached an employee of Hungri's Restaurant at closing time.  He ordered her back into the store, pointed a gun at her and a second employee and demanded the receipts.  He ordered her to remove the padlock from the cash drawer and took $696.17.  He threatened to shoot them if they moved before they heard a car leave.  On October 22, 1980, the defendant cashed a check forged on the account of his brother David Cronk.  The check was in the amount of $25.00.  (Report #80-2929, 80-3179 80-3304A and 80-3304)  Disposition:  Pending.  A hold has been

-18-

317

IV.   CRIMINAL RECORD:    (Continued)

placed on the defendant in the Sacramento County Jail and

Wisconsin authorities are waiting the outcome of the instant

offense.

     May 20, 1982, 4573.6 P.C., Possession of Contraband

in Prison, 4574 P.C., Possession of Weapons in Prison, SSO

Rpt. #82-37966:   Officers were conducting a shake down

search of the Sacramento County Jail and discovered two

jail made "shanks" and a hypodermic kit in the defendant's

cell.  Disposition:   July 26, 1983, Docket #61038F, both

charges dismissed.

V.   SOCIAL HISTORY:

     Education

     The defendant dropped out of Mukwonago High School

in Mukwonago, Wisconsin, during the first semester of the 11th

grade.  He stated that he was not in trouble in school but was

bored with school and wanted to quit and go to work.  In

addition, his father had died and his mother was ill.  He

subsequently obtained his GED through the American

Correspondence Academy in Wisonsin.

     Employment

     The defendant has been incarcerated for three

years so has no recent employment.  He was last employed

-19-

BERT E. KELDGORD
PROBATION OFFICER
SACRAMENTO COUNTY
CALIFORNIA

318

V.   SOCIAL HISTORY:   (Continued)

between 1977 and 1980, as a service manager for LaBries

Waterbeds.   Prior to that he had been a warehouseman for

Jason and Sons for approximately seven months.

### Family History

The defendant is single and has resided in the

Sacramento County Jail for the past three years.   He and

Mary Kreil were married in 1973.   One daughter, now age 7,

was born to that union, which ended in divorce in 1980.

The defendant was born in Milwaukee, Wisconsin, and

reared in Palmyra, Wisconsin.   He described it as a farming

community and he grew up on his family's small farm.   He

had a very close relationship with his father who died when

the defendant was 17 years old.   He is also close to his

mother and three siblings.

The defendant's mother writes that she cannot

believe that this is happening to her son as he was always

a kind, thoughtful, sensitive, gentle, tenderhearted and

loving person.   He was an average student in school but

outgoing and had many friends.   He went into a deep

depression after his father died.   At the age of 18, he and

his wife were married.   They lived with her mother for a

while but that did not work and his wife left and moved to

California to stay with her father.   After a short time, she

asked her husband to join her in California, which he did.

Mrs. Cronk stated that she seldom heard from her son while he

BERT E. KELDOCRD
*OBATION OFFICER
CRAMENTO COUNTY

319

V.  SOCIAL HISTORY:  (Continued)

was in California and really does not know much about his life here.  He remained in California even though his wife left and returned to Wisconsin.

Mrs. Cronk states that prior to leaving Wisconsin, her son had a "nervous breakdown".  In mid-1980, she received word through Donald's friend that her son had a "nervous problem" and was being held in a crisis center in California.  He returned to Wisconsin in August of 1980, "to rest and to come to terms with himself".  He was not able to find employment there, however, so left after approximately two months.  She stated that although her son has shown some leadership qualities, he is also a follower and has "given in" under the stress of peer pressure.

The defendant's sister, Kevee Lynn Kienast writes that the defendant is dearer to her than anyone on earth.  She was four years old when he was born and they were very close.  He has always worked hard and seemed to have a drive to "prove that he was somebody".  She states that she worries about his wellbeing night and day, especially if he is sentenced to prison.  He is not a hardened criminal and "if given a chance to prove himself could be an asset to others".  He knows how much his actions have hurt the family and has expressed regret.

The defendant's other sister, Pamela Vetta, writes that she feels she is writing about a stranger as the wonderful

-21-

V.  SOCIAL HISTORY:   (Continued)

brother she knew could not be in this situation.  He was

"the sort of boy who all his friends parents wanted their

children to emulate because he was so straight.  I've always

known Donny to be loving, truthful and ambitious".  After he

came to California, he became a stranger but she continued

to love him dearly and would do anything possible to help

him.

### Agency and/or Collateral Contacts

#### Psychological/Psychiatric/Medical

Doctor David E. Smith, examined Mr. Cronk at the

Sacramento County Jail on July 11, 1982, and also reviewed

a psychiatric report prepared by Dr. Fredrick Whipple.  Dr.

Smith states:

> "Based on this information it is my opinion that
> Mr. Cronk was a compulsive abuser of high doses of
> cocaine starting in late 1979 and abused alcohol
> primarily as a depressant with the stimulant effect
> of cocaine.  At the time of the crime in December of
> 1980, he was compulsively using cocaine either by
> smoking cocaine freebase or injecting cocaine at a
> very high dose level of 5 or 6 grams per day, drink-
> ing two to four six-packs of beer primarily in the
> evening as well as 6 to 8 10mgs. of Valium in a
> classic upper-downer drug abuse cycle.  At the time
> of the crime he was not suffering a cocaine psychosis
> characterized by paranoia with ideas of reference,
> auditory and visual hallucinations.  He was however,
> addicted to cocaine, utilizing our definition which
> is 'compulsion, loss of control and continued use
> in spite of consequences.'

> "In my opinion, Mr. Cronk, who did not have a crimin
> record prior to his compulsive use of cocaine,
> Manifested personality change and life-style change
> with his criminality being associated with his
> compulsive cocaine abuse. Had he not become addicte

HERT E. KELGORD
OBATION OFFICER
RAMENTO COUNTY

321

V.   SOCIAL HISTORY:    (Continued)

> "to cocaine during the time of the crime, I believe
> the robbery and murder of December 1980 would not
> have been committed, as its purpose was to gain funds
> in order to support his compulsive cocaine habit.
> The crime however, was goal oriented and was not the
> manisfestation of a cocaine psychosis".

Doctor Pierce Rooney, Director of Forensic

Pathology for the Sacramento County Coroner's Office, examined

the defendant on September 12, 1983.  He concluded that four

scars on the defendant's body were suggestive of gunshot

type scars.  They may represent the entrance and exit holes

of two gunshot wounds.  Two of the scars were on the anterior

and posterior lateral portion of the left arm.  The others

were on the nipple line of the anterior left chest and the

left back approximately eight and three quarter inches below

the shoulder.

The defendant's ex-wife reported to Whitewater

Wisconsin Police officers that Mr. Cronk had attempted

suicide by overdosing on aspirin and was hospitalzied around

February of 1978.  Following this, he went to counseling in

Jefferson County.  She stated that he had trouble "coping

with life".  No medical confirmation of this has been obtained.

### Special Investigation Agencies

Rod Harmon, of Harmon Investigators reported by

phone that there are serious problems with the physical

evidence and some of the evidence has been destroyed.  He

felt that Mr. Ogle, the criminalist from Valley Toxicology

-23-

ERT E. KELDGORD
BATION OFFICER
CRAMENTO COUNTY
CALIFORNIA

322

V.    SOCIAL HISTORY:    (Continued)

could explain that problem in more detail.  Mr. Harmon stated,

however, that of all the clients he has had over the years,

Mr. Cronk is the only one that he would not hestitate to

have as a friend on the outside.  He seems to genuinely

care about other people and from the very beginning was

willing to pay the penalty for his actions.  He seems very

different from the usual criminal and incarceration is such

a waste. Even jailers, who have gotten to know the defendant,

have reported that he is different from the others.  Mr.

Cronk believed he had shot the victim as that is what he was told.

Mr. Robert Ogle, Criminalist with Valley

Toxicology was contacted by phone.  He stated that his job

was to attempt to reconstruct the scene of the crime which

was severely hampered by the destruction of the defendant's

weapon.  When that weapon was recovered, three bullets had

been fired and three were not fired.  When the Crime Lab

test fired the gun, they used a copper jacketed bullet and

that shot matched a bullet recovered from the shed.  The

fatal bullet, recovered from Mr. Allen, however, was lead and

the Crime Lab did not test fire a lead bullet.  Authorities

also did not document the type of bullet left in the

weapon or from the three expended casings.  The fatal

bullet was a Winchester Western Super-semi Wad Cutter.  Be-

cause of the lack of documentation and the destruction of

the weapon he was not able to prove that the fatal bullet

JOHN E. KELDGORD
PROBATION OFFICER
SACRAMENTO COUNTY
CALIFORNIA

V.  SOCIAL HISTORY:    (Continued)

was fired from a gun other than Mr. Cronk's and by the same token, the District Attorney was not able to prove that the fatal bullet was fired by Mr. Cronk's gun.

Mr. Ogle stated that there was no evidence of a third party in the house, when Mr. Allen returned home, but there was a third party in the area at the time.  Mr. Cronk recalls the victim facing him at all times with the victim's right side exposed to Mr. Cronk and his left side exposed to Mr. Meyer.  The defendant's statement fits the reconstruction of the scene.  The location of the bullets show the victim pivoting and firing at Mr. Cronk as he pivoted.  There were four shots fired from Mr. Allen's weapon and the defendant was hit three times.  The defendant only recalls firing once and that was after being hit himself.

There were seven projectiles recovered from the scene.  One copper casing was recovered on the walk in front of the house which made it appear that the victim fired that shot at Mr. Cronk as the defendant was fleeing.

Interested Persons

Christopher Shirley writes that he and the defendant became friends in April of 1978, while both were working at LaBries Waterbeds.  Mr. Cronk was regarded as a "Work Alcoholic" which was causing marital problems.  He and the defendant began stopping after work for a few drinks and then began the occasional use of cocaine.  The use of cocaine

OSBERT E. KELDGORD
PROBATION OFFICER
SACRAMENTO COUNTY
CALIFORNIA

V.   SOCIAL HISTORY:   (Continued)

was initially only on weekends but after Mr. Cronk's marriage

terminated they had more opportunities to party together.  By

approximately August of 1978, cocaine began playing a major

role in both his and the defendant's lives.  Mr. Shirley

states "it was instant satisfaction without the hard work and

easy to obtain".  Mr. Cronk then met Glenn Meyer and Charles

Lovely.  Mr. Shirley states "Don had confided to me that he

was stealing from work and that Chuck was supplying him with

customers who paid well for their merchandise.  This was

additional money for additional coke.  I was also in debt

continuously so I had stolen some merchandise from my place

of employment for Chuck Lovely directly".

Mr. Shirley wrote that he left Sacramento and

changed his life style in early 1980, after which he had

little contact with Mr. Cronk.  He has, however, visited

the defendant in jail and states that "Don has expressed

sincere remorse over his actions".  He feels that the

defendant has "paid for his transgressions over and over in

his heart and that it is something that will be with him for-

ever."

The defendant's ex-girl friend who was 16 years old

at the time the offense was committed has talked with this

officer by phone and has written a letter.  She stated that

she is not too clear about all of the details at the time as

she was also using a lot of cocaine.  She feels that Chuck

ERT E. KELDGORD
BATION OFFICER
RAMENTO COUNTY
CALIFORNIA

325

V.   SOCIAL HISTORY:    (Continued)

Lovely was the one who planned everything and after the culprits were arrested, Mr. Lovely told her not to mention his name in connection with the offense.  She has corresponded with the defendant.  She stated that the last time she saw Mr. Cronk was when she went to stay with him at the motel in San Jose.  She then had no contact with him until March of 1984, when she visited him in jail.  They have corresponded since that time.  She states "I'm truly surprised in the change in Mr. Cronk's attitude.  His mind appears clear again and he expresses more concern for other people than he used to.  He realizes what he has done and in a way is glad that he has been stopped from his life of drugs and crime".

A friend, Mary Jane Turner, writes that she has known the Cronk family for thirty years and Donald always had a lot of friends and had a "very gentle loving heart".  She cannot believe that he is where he is, considering his upbringing and good character".

VI.   CONTROLLED SUBSTANCES:

The defendant states that he drank alcohol socially but that he never had a problem with it.

The defendant acknowledges that he had a problem

BERT E. KELDGORD
PROBATION OFFICER
SACRAMENTO COUNTY
CALIFORNIA

VI.   CONTROLLED SUBSTANCES:    (Continued)

with cocaine.  He was snorting up to 2 grams of cocaine a day and freebasing it at parties.  He was also using quite a bit of marijuana.  He was at the point where he would wake up at night to have a fix.  He tried to get away from cocaine but couldn't and even went to two different crisis centers, one in 1978 and one in 1979.  He was turned away as cocaine was supposedly not addicting.  His need for cocaine, and obtaining the money to purchase it, were the direct cause of the present offense.

VII.   EVALUATION:

The defendant is ineligible for probation pursuant to Section 1203.06 of the Penal Code.  Even if the defendant were eligible for probation, probation would not be recommended due to the nature of the offense.

This 28 year old defendant, who was 25 years old at the time the offense was committed, has no significant prior record.  He became heavily involved in the use of cocaine and planned with three others to obtain money by burglarizing the home of James Allen and robbing him of a large diamond ring.  He and Glenn Meyer entered the victim's home and waited for his arrival.  The victim was somehow alerted to their presence in his home and entered with his

-28-

327

VII.  <u>EVALUATION:</u>  (Continued)

gun drawn.  A shoot-out ensued in which the victm was shot

and killed.  Donald Cronk was shot at least two times by the

victim, but survived.  The victim's briefcase which contained

coins, gold and diamonds and his diamond ring were taken.

It is recommended that the defendant be sentenced

to the Department of Corrections for the term presecribed by

law of twenty-five (25) years to life for violation of Section

187(a) of the Penal Code, Murder in the First Degree, as

alleged in Count One.  It is further recommended that the

sentence be enhanced by two years for the use of a firearm

pursuant to Section 12022.5 of the Penal Code for a total

prison term of twenty-seven (27) years to life.

BERT E. KELDGORD
IOBATION OFFICER
RAMENTO COUNTY

328

VIII.   RECOMMENDATION:

Therefore, it is respectfully recommended that the
defendant be sentenced to State Prison for the term
prescribed by law and further, that this term be enhanced by
an additional two year sentence.

Respectfully submitted,

ROBERT E. KELDGORD
CHIEF PROBATION OFFICER

VEARL J. HAYNES
SR. DEPUTY PROBATION OFFICER

APPROVED: _____
JAMES W. NEWBERRY, SUPERVISING PROBATION OFFICER

VJH:jh
5/15/84
Attachments

-30-

329

2̃

# NEWS FROM TiPS

Formerly known as Voters Corrections Reform Coalition (VCRC), this past November we changed our name to Taxpayers for Improving Public Safety (TiPS) for better name recognition & appeal with the public. All prior paperwork and membership details under VCRC were automatically transferred to TiPS, so the only thing members need to do is keep their union dues current. TiPS (along with our California Prisoners Union), is the **only** legitimate union representing inmates, wards, parolees, probationers, and their families.

**LOBBY DAY: on April 19th** they'll have their annual "Lobby Day" in Sacramento, where members of TiPS will come up to the State Capitol for the day to meet with Legislators and staff to discuss prison issues. Our members are the backbone of our political power, so all those who are able are encouraged to attend.

**ISL INMATES & FOREIGN NATIONALS:** in addition, thru TiPS our lobbyists are sponsoring several pieces of legislation this year ranging from removing politics from parole (for ISL inmates) and having a fair Board, to sending 18,000 undocumented inmates who are foreign nationals back to their home countries. Within the next 3 years we hope to send 25,000 inmates back home to their families.

**POLITICAL EMPOWERMENT:** the line has been drawn in the sand. The prison reform community – thru TiPS – is taking back their rights from the law enforcement special interests who see inmates as dollar signs. We have the high potential for more members and financial backing, and finally we are now building the unity thru TiPS to flex our political muscles and restore fairness to corrections.

**THREE STRIKES:** we continue to analyze the different initiative proposals coming out of the LA District Attorney's office, and Calif. District Attorney's Association. While TiPS staff will make recommendation to our members, it will ultimately be up to our members to vote on TiPS official position – to support or oppose the initiative's final version. Want your vote to count? You have to be a member. For more information on memberships visit us online at www.ForPublicSafety.com or write to us at: TiPS, P.O. Box 255456, Sacramento, CA 95865.

*- Matthew Gray*

# BPH STATISTICS

Note: We have two separate and slightly different compilations of statistics for 2005. This one seems to be the most accurate:

### BPH 2005 Lifer Hearings

| Suitability decisions: | (2,023) | Unsuitable: | 1,882 |
|---|---|---|---|
| Parole grants: | | 1-year denials | 715 |
| First degree murder | 28 | 2-year denials | 582 |
| Second degree murder | 95 | 3-year denials | 234 |
| Kidnaps | 12 | 4-year denials | 201 |
| Attempted murder | 5 | 5-year denials | 149 |
| P.C. §12310(c) | 1 | | |
| Total parole grants: | 141 | | |

### Governor's 2005 Statistics

| Non-Murder cases reviewed (34) | |
|---|---|
| Referred to en banc | 29 |
| No action (approved) | 05 |

| First degree murder cases reviewed (38) | |
|---|---|
| Reversed | 34 |
| No action (approved) | 04 |

| Second degree murder cases reviewed (151) | |
|---|---|
| Reversed | 131 |
| No action (approved) | 20 |

VOLUME I   NUMBER 4     CALIFORNIA LIFER NEWSLETTER     JANUARY-FEBRUARY 2005   PAGE 8

*Court Decisions...from page 7*

*No evidence supports boilerplate grounds for unsuitability* (cont'd)

## IN RE SEYMOUR

2004 WL 2749090 (11-24-04) (unpublished) (#)

The Court of Appeal affirmed in full the San Luis Obispo County Superior Court's *second* decision vacating a BPT panel's finding of unsuitability because its grounds were supported by no evidence, and ordering Michael James Seymour's release on parole because, having reviewed the evidence and finding none supporting unsuitability, further adjudication of Seymour's suitability would amount to an "idle act."

The Superior Court had once before referred Seymour for a new parole hearing after a previous panel's determination was supported by no evidence. The Court of Appeal held also that BPT was estopped from relitigating the validity of the Superior Court's previous decision.

California Supreme Court records reflect that BPT has not yet sought further review. Seymour's counsel and the PLO have requested publication.

## IN RE THEODORE JOHNSON

Los Angeles Superior Court BH002743
Court of Appeal 2d Dist. B161691

After serving 23 years for the second degree murder of his wife committed during a domestic dispute, Theodore Johnson is free at last. In mid-2002, the Los Angeles County Superior Court, finding no evidence in the record in support of the BPT panel's finding of unsuitability, ordered Johnson's parole. The Court of Appeal agreed but remanded for a new parole hearing. BPT conducted that hearing and found Johnson suitable.

As expected, Gray Davis reversed the Board, citing, as usual, the boilerplate adjectives and phrases that the Superior Court and Court of Appeal had stricken for lack of evidence ("especially cruel and callous crime," "needs further therapy"). Consequently, the Superior Court set aside the Governor's action and again ordered Johnson's release. At the urging of Johnson's counsel, Keith Wattley (PLO), the Governor did not appeal the new order. In early January, Theodore Johnson was finally released on parole.

## IRONS V. WARDEN, CSP Solano (#)

U.S. Dist. Ct., ED Ca; 01-29-05; no. 04-0220.

The federal court found no evidence to support any ground stated by the panel for finding Carl Irons unsuitable for parole at his fifth hearing in 2001, and ordered BPT to conduct a hearing within 30 days to determine Irons' prison term and to release him on parole if said term has lapsed. Irons was convicted of second degree murder in 1985.

The Court held the "some evidence" standard to be satisfied only by evidence with an indicia of reliability, and relied heavily on *Biggs v. Terhune*, 334 F.3d 910 (9th Cir, 2003) (#) in reiterating that continued denial of parole, as in Irons' case, to an otherwise parole-suitable lifer, based on unchangeable factors of the commitment offense, abrogates due process by converting the prison term to life without the possibility of parole.

The federal judge also rejected the Attorney General's oft-stated notion that claims originating from Irons' 2001 hearing were moot because he attended two subsequent hearings at which parole was also denied.

---

### FINAL 2004 LIFER PAROLE STATISTICS

According to BPT, for the year 2004, it conducted 2,813 parole hearings for all lifers, of which its panels found 199 lifers (7.4%) suitable for parole.

Governor Schwarzenegger reversed 64% of first and second degree murder cases he reviewed in 2004 (*), allowing 20 of 55 first degree case grants and 52 of 146 second degree case grants to parole.

(*) The number of cases reviewed by the Governor does not coincide with the number of BPT parole grants in murder cases because numerous 2003 grants were reviewed in 2004 and many 2004 grants have not yet been reviewed.

There are significant statistical differences between these figures and those released by the Governor's office. E.g., BPT's figures for the number of hearings and total grants doesn't align with the Governor's or allow for the significant numbers of non-murder cases considered. We hope to resolve the discrepancies by the next issue.

---

### BPT ORDERED TO PRODUCE TRANSCRIPTS

### In re MORRIS BRAGG (#)

Santa Clara County no. 108543 (Pending)

In November, the Court ordered the Attorney General to submit all BPT parole decisions (the final portions of parole hearing transcripts) rendered between August and October, 2004, to be followed by an evidentiary hearing, to determine whether BPT's panels employ the gravity of the commitment offense to justify *every* parole denial. *Dannenberg* imposes obstacles to the petitioner's efforts in the Court of Appeal.

### *Editor's Notes:* CITATION OF UNPUBLISHED OPINIONS IS SOMETIMES PERMITTED

Rule 977(b) of the California State Rules of Court (#) permits the citation of and reliance upon unpublished opinions (1) when the opinion cited is relevant under the doctrines of law of the case, res judicata, or collateral estoppel, or (2) when the opinion is relevant to a criminal or disciplinary action because it states reasons for a decision affecting the same defendant or respondent in another such action.

Subsection (c) of the Rule requires that a copy of the unpublished opinion cited or relied on must be furnished to the court and all parties by attaching it to the document in which it is cited.



HIGHER FINES FOR WEALTHY

'I'M GIVING YOU A LONGER SENTENCE AS YOU'VE GOT MORE LIFE LEFT.'

1  BILL LOCKYER
   Attorney General of the State of California
2  ROBERT R. ANDERSON
   Chief Assistant Attorney General
3  PAUL D. GIFFORD
   Senior Assistant Attorney General
4  SUSAN DUNCAN LEE
   Supervising Deputy Attorney General
5  MICHELLE A. DES JARDINS
   Deputy Attorney General
6  State Bar No. 168079
    110 West "A" Street, Suite 1100
7  San Diego, CA 92101
   P.O. Box 85266
8  San Diego, CA 92186-5266
   Telephone: (619) 645-2295
9  Fax: (619) 645-2581
   Attorneys for Respondent

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  FOR THE COUNTY OF LOS ANGELES

13

14  In re                                    Case No. BH 001820

15                                           DECLARATION OF THOMAS J.
    RICHARD ANTHONY DAVIS,                   REMY
16

17              On Habeas Corpus.

18

19         I Thomas J. Remy, declare as follows:

20         1. I am employed by the California Board of Prison Terms (BPT) as a Legal Analyst at

21  the BPT's central office in Sacramento, California. I have been employed by the BPT since 1982.

22  I have been assigned to the legal unit since 1988, and have held the job title of legal analyst for

23  approximately two years. If sworn as a witness, I would be competent to testify to the facts

24  contained herein as they are within my personal knowledge.

25         2. Within the legal unit, my regularly assigned duties have at all times included

26  responsibilities for accurately collecting, compiling and maintaining information associated with

27  the results of life term inmate parole consideration hearings at which a finding of suitability has

28  been proposed. This includes maintaining records and data compilations showing the numbers of

1  parole hearings, the commitment offense, the results of parole hearings, the results of internal

2  decision review within the BPT and the results of subsequent actions taken by the BPT and/or the

3  Governor concerning proposed parole suitability decisions.

4       3. I maintain these data compilations and associated reports based on documents which I

5  regularly receive following completion of parole hearings as conducted by BPT commissioners

6  and deputy commissioners, and following the outcome of subsequent decisions within the BPT

7  and the Governor's office as reported in writing. I also maintain information documenting the

8  release of life prisoners after a proposed decision has become effective. The information I compile

9  is relied upon and used to produce reports or other data compilations as required by various

10  administrative and statutory directives.

11       4. At the request of the California Attorney General's Office, I prepared information in

12  April 2001 which was presented as an informational exhibit, designated "Exhibit 200", pursuant to

13  an evidentiary hearing held at Richard J. Donovan State Prison as part of a state habeas corpus

14  action, *In re Sheets*, et al., San Diego Superior Court Cases No.'s HSC10270, 10324, 10336,

15  10279 and 10329. Exhibit 200 presented data associated with BPT parole actions sorted by inmate

16  names, proposed suitability decisions, decisions made effective, decisions forwarded to the

17  Governor, and the results of the Governor's reviews for January 1, 1991 through approximately

18  April 15, 2001. I prepared the exhibit from the business records which I regularly maintain in my

19  duties as a legal analyst at the BPT. I am aware that Exhibit 200 was admitted into evidence by

20  the trial judge in the *Sheets* matter.

21       5. Between January 8, 2002 and April 1, 2002, I updated the previously referenced data

22  compilation (Exhibit 200) to reflect information compiled through the end of March 2002, relying

23  upon the records I regularly maintain.

24       I declare under penalty of perjury that the foregoing is true and correct. This declaration

25  was executed on April 2, 2002, County of Sacramento, State of California.

26

27  Thomas J. Remy
     Declarant

28

333

# EXHIBIT 10A

334

January through March 2002

Approximate number of life parole consideration hearings:
                  1400

Proposed suitability decisions:              37

      Andrews B-80774
      Ayala H-35316
      Boyd D-03168
      Crawford W-17776
      Criscione C-08692
      Denney C-45201
      Dominguez E-88038
      Esquivel C-08411
      Fleming D-42602
      Freeman C-52072
      Gibson C-27414
      Gonzales C-19276
      Gracia W-25789
      Hall E-17767
      Hoxie B-97763
      Kim D-52181
      Kim D-52185
      Lara C-22194
      Ledesma C-48212
      Minor C-25542
      Montoya W-17575
      Morales C-56981
      Munoz W-31783
      O'Connell C-47331
      Prum          C-21358
      Ramos C-60833
      Ramp W-29812
      Rodriguez C-30985
      Sandoval D-19576
      Schulz W-22767
      Stewart C-33018

335

**Suarez W-17419**
**Tarver B-87919**

January – March 2002 continued

**Tokhmanian D-12217**
   **Vergara E-23542**
   **Wallis D-26901**
   **Woodmore W-26904**

**Effective grants:**        24

   **Anderson C-09715**
   **Baker C-95952**
   **Battee D-16811**
   **Beeman C-10840**
   **Boone D-37952**
   **Boston C-32763**
   **Boyd W-25189**
   **Briones W-25038**
   **Caetano W-24065**
   **Carr H-19550**
   **Corcoran C-75505**
   **Diamond W-12510**
   **Ginsburgs B-89097**
   **Hamilton C-22546**
   **Jauregui D-98794**
   **Kemp C-87770**
   **Lewis B-83314**
   **Martinez C-61422**
   **Mingura W-56533**
   **Moreno B-67024**
   **Owens C-63291**
   **Sellers W-21852**
   **Singer C-44947**
   **Yniguez W-20689**

**336**

**January – March 2002** continued

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

      **Anderson C-09715**
      **Baker C-95952**
      **Battee D-16811**
      **Beeman C-10840**
      **Boone D-37952**
      **Boyd W-25189**
      **Briones W-25038**
      **Caetano W-24065**
      **Corcoran C-75505**
      **Diamond W-12510**
      **Ginsburgs B-89097**
      **Hamilton C-22546**
      **Jauregui D-98794**
      **Kemp C-87770**
      **Lewis B-83314**
      **Martinez C-61422**
      **Moreno B-67024**
      **Owens C-63291**
      **Sellers W-21852**
      **Singer C-44947**
      **Yniguez W-20689**

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

      **Amaro D-69421**
      **Barber E-80872**
      **Boston C-32763**
      **Jordan C-39094**
      **Martin D-06844**
      **Miller C-51648**

337

**January – March 2002** continued

*Reversed:*        20

>    **Anderson C-09715**
>    **Baker C-95952**
>    **Beeman C-10840**
>    **Boone D-37952**
>    **Briones W-25038**
>    **Caetano W-24065**
>    **Corcoran C-75505**
>    **Cray B-89640**
>    **Diamond W-12510**
>    **Ginsburgs B-89097**
>    **Harmon C-56404**
>    **Kemitch C-72999**
>    **Kemp C-87770**
>    **Lewis B-83314**
>    **Ly E-06377**
>    **Martinez C-61422**
>    **Moreno B-67024**
>    **Morton C-53865**
>    **Owens C-63291**
>    **Yniguez W-20689**

*Referred en banc:*        5

>    **Barber E-80872**
>    **Boston C-32763★**
>    **Medeiros H-48212★★**
>    **Miller C-51648**
>    **Young B-72883**

338

*Modified:*    0

*No action taken:*    0

*BPT en banc: schedule a rescission hearing

**BPT en banc: affirmed release date; released

*Released:*        6

>    **Barrett C-87599**
>    **Leturgey C-13550**
>    **Liu D-64422**
>    **Medeiros H-48212**
>    **Rincon D-01828**
>    **Squyres C-61584**

# 2001

Total number of life parole consideration hearings:    <u>Approx . 3550</u>

**Proposed suitability decisions:**           82

Aguirre W-18142
Allen W-39502
Amaro D-69421
Anderson C-09715
Arevalo C-04938
Baker C-95952
Barrett C-87599
Barron C-33124
Basden C-02645
Battee D-16811
Beeman C-10840
Boone D-37952
Boston C-32763
Boyd W-25189
Briones W-25038
Cabral C-72483
Caetano W-24065
Carr H-19550
Chandler D-07980
Chattman C-05576
Corcoran C-75505
Cray B-89640
Daniels C-79998
Diamond W-12510
Douglas E-11133
Eastman C-81650
Espinoza E-11462
Esquivel C-08411
Frias B-90588
Ginsburgs B-89097
Gottlieb C-22353
Gray C-30549
Hamilton C-22546
Harmon C-56404
Hinkles C-05011
Holden C-39050
Holder E-87291
Jauregui D-98794
Johnson B-88644
Johnson C-51674

1

**2001, continued**

Proposed suitability decisions (cont.)

Jones E-25463
Jordan C-39094
Kemitch C-72999
Kemp C-87770
Lambert W-17326
Leturgey C-13550
Lewis B-83314
Licona H-29159
Lindley C-23911
Liu D-64422
Ly E-06377
Martin D-06844
Martinez C-61422
Martinez D-11135
McClendon C-55324
McSwain C-78644
Mills C-77630
Mingura W-56533
Moreno B-67024
Morrall C-69912
Morton C-53865
Murr B-87723
Owens C-63291
Pacheco W-16769
Pluth C-00127
Porter E-31369
Ragusa D-70729
Rincon D-01828
Robinson H-56216
Rogers D-17219
Scott D-72403
Sellers W-21852
Shade D-01781
Singer C-44947
Smith C-23004
Squyres C-61584
Stokes C-59126
Taylor C-54340
Thomas B-73496
Thompson D-21162
Yniguez W-20689
Young B-72883

2

**341**

**2001, continued**

Proposed suitability decisions made effective:          59

      Aguirre W-18142
      Allen W-39502
      Anchondo C-82608
      Arevalo C-04938
      Barber E-80872
      Barrett C-87599
      Barron C-33124
      Basden C-02645
      Chandler D-07980
      Chattman C-05576
      Crawford C-88729
      Crawford W-17776
      Cray B-89640
      Daniels C-79998
      Douglas E-11133
      Dryman W-15931
      Eastman C-81650
      Freeman C-52072
      Frias B-90588
      Gallegos E-52064
      Goldsby C-97620
      Hamai E-79839
      Harmon C-56404
      Herrera D-66607
      Hinkles C-05011
      Holden C-39050
      Ignacio C-51235
      Johnson B-88644
      Jones E-25463
      Kemitch C-72999
      Kemp C-87770
      Kunkler C-82193
      Leturgey C-13550
      Lewis B-90593
      Licona H-29159
      Lindley C-23911
      Liu D-64422
      Ly E-06377
      Martinez D-11135
      McClendon C-55324
      Minor C-25542
      Morrall C-69912

3

342

**2001, continued**

Proposed suitability decisions made effective (cont.)

      Morton C-53865
      Murr B-87723
      Pluth C-00127
      Porter E-31369
      Ragusa D-70729
      Rincon D-01828
      Scott D-72403
      Skinner C-83838
      Smith C-23004
      Squyres C-61584
      Stokes C-59126
      Taylor C-54340
      Thompson D-21162
      Tokhmanian D-12217
      Yniguez W-20689
      Young B-72883
      Zamora B-83998

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

      Aguirre W-18142
      Allen W-39502
      Arevalo C-04938
      Barron C-33124
      Chandler D-67980
      Chattman C-05576
      Crawford W-17776
      Cray B-89640
      Dryman W-15931
      Eastman C-81650
      Freeman C-52072
      Frias B-90588
      Goldsby C-97620
      Harmon C-56404
      Hinkles C-05011
      Holden C-39050
      Ignacio C-51235
      Johnson B-88644
      Kemitch C-72999
      Kunkler C-82193
      Lindley C-23911
      Ly E-06377
      Martinez D-11135

4

**343**

## 2001, continued

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2* (cont.)

McClendon C-55324
Minor C-25542
Morrall C-69912
Morton C-57865
Murr B-87723
Pluth C-00127
Porter E-31369
Scott D-72403
Skinner C-83838
Smith C-23004
Thompson D-21162
Tokhmanian D-12217
Yniguez W-20689
Zamora B-83998

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

Barrett C-87599
Basden C-02645
Daniels C-79998
Hamai E-79839
Herrera D-66607
Leturgey C-13550
Lewis B-90593
Licona H-29159
Liu D-64422
Martinez C-89969
Medeiros H-48212
Peralo D-06447
Rincon D-01828
Sarmiento D-20964
Squyres C-61584
Stokes C-59126
Taylor C-54340
Young B-72883

5

**344**

## 2001, continued

*Reversed by Governor:*    36

    Aguirre W-18142
    Allen W-39502
    Arevalo C-04938
    Barron C-33124
    Chandler D-07980
    Chattman C-05576
    Crawford W-17776
    Dryman W-15931
    Eastman C-81650
    Freeman C-52072
    Frias B-90588
    Goldsby C-97620
    Hinkles C-05011
    Holden C-39050
    Ignacio C-51235
    Kunkler C-82193
    Jackson W-16298
    Johnson B-88644
    Lindley C-23911
    Martinez D-11135
    McClendon C-55324
    Miller C-51648
    Minor C-25542
    Morrall C-69912
    Murr B-87723
    Pluth C-00127
    Porter E-31369
    Sanchez C-43560
    Scott D-72403
    Skinner C-83838
    Smith C-23004
    Thompson D-21162
    Tokhmanian D-12217
    Yambao C-17329
    Yniguez W-20689
    Zamora B-83998

6

**345**

## 2001, continued

*Referred en banc to BPT by Governor:*      17

> Anchondo C-82608*
> Barrett C-87599
> Basden C-02645**
> Daniels C-79998**
> Gallegos E-52064**
> Herrera D-66607**
> Leturgey C-13550
> Lewis B-90593**
> Licona H-29159*
> Liu D-64422
> Martinez C-89969*
> Peralo D-06447***
> Rincon D-01828**
> Sarmiento D-20964**
> Squyres C-61584**
> Stokes C-59126*
> Taylor C-54340*

*BPT en banc: schedule a rescission hearing
**BPT en banc: affirmed release date; released
***BPT en banc: schedule a rescission hearing; rescission hearing affirms release date, released

*Modified:*      0

*No action taken:*      0

346

## 2000

Total number of life parole consideration hearings: <u>Approx.</u> 2175

Proposed suitability decisions:      51

Alaniz C-58163
Anchondo C-82608
Andrade W-28038
Barber E-80872
Barrientez D-29258
Barrientos D-49446
Battee D-16811
Brown C-88184
Calderon C-74749
Carr B-21651
Crawford W-17776
Crawford C-88729
Dryman W-15931
Feliciano E-69714
Flores C-44235
Freeman C-52072
Gallegos E-52064
Goldsby C-97620
Hamai E-79839
Herrera D-66607
Ignacio C-51235
Jackson W-16298
Kunkler C-82193
Ledesma C-48212
Lewis B-90593
Lewis D-64046
Liang C-52915
Martinez C-61422
Medeiros H-48212
Mewborn C-31391
Miller C-51648
Minichilli W-22390
Minor C-25542
Murr B-87723
Parker W-25811
Pinchot C-30345
Rangel C-66398
Rodriguez C-66666

8

347

## 2000, continued

**Proposed suitability decisions:** (continued)

    Rosenkrantz D-34119
    Sanchez C-43560
    Skinner C-83838
    Smith C-23004
    Smith E-09591
    Tokhmanian D-12217
    Velasquez C-87564
    Whipkey C-97826
    Woods C-33998
    Yambao C-17329
    Yniguez W-20689
    Young B-72883
    Zamora B-83998

**Proposed suitability decisions made effective:**    26

    Alaniz C-58163
    Andrade W-28038
    Barrientez D-29258
    Barrientos D-49446
    Battee D-16811
    Brown C-88184
    Calderon C-74749
    Feliciano E-69714
    Flores C-44235
    Houston W-15036
    Jackson W-16298
    Ledesma C-48212
    Liang C-52915
    Martinez C-61422
    Medeiros H-48212
    Mewborn C-31391
    Miller C-51648
    Minichilli W-22390
    Parker W-25811
    Rodriguez C-66666
    Rosenkrantz D-34119
    Sanchez C-43560
    Sawvell C-39140
    Smith E-09591
    Woods C-33998
    Yambao C-17329

348

## 2000, continued

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

      Andrade W-28038
      Barrientez D-29258
      Battee D-16811
      Flores C-44235
      Jackson W-16298
      Ledesma C-48212
      Liang C-52915
      Martinez C-61422
      Miller C-51648
      Parker W-25811
      Rodriguez C-66666
      Rosenkrantz D-34119
      Sanchez C-43560
      Smith E-09591
      Sawvell C-39140
      Woods C-33998
      Yambao C-17339

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

      Alaniz C-58163
      Anchondo C-82608
      Barrientos D-49446
      Brown C-88184
      Calderon C-74749
      Caldwell C-20280
      Davis E-00026
      Feliciano E-69714
      Gallegos E-52064
      Houston W-15036
      Hummer D-85633
      Lawrence C-28523
      Mewborn C-31391
      Minichilli W-22390
      Wade W-15797
      Woods W-30326

349

## 2000, continued

*Reversed by Governor:*        13

       Andrade W-28038
       Barrientez D-29258
       Battee D-16811
       Flores C-44235
       Ledesma C-48212
       Liang C-52915
       Martinez C-61422
       Rodriguez C-66666
       Rosenkrantz D-34119
       Smith E-09591
       Sawvell C-39140
       Woods C-33998
       Yambao C-17339

*Referred en banc to BPT by Governor:*        14

       Alaniz C-58163***
       Barrientos D-49446**
       Brown C-88184**
       Calderon C-74749**
       Caldwell C-20280^
       Davis E-00026**
       Feliciano E-69714**
       Houston W-15036**
       Hummer D-85633 **
       Lawrence C-28523**
       Mewborn C-31391**
       Minichilli W-22390*
       Wade W-15797***
       Woods W-30326**

*Modified by Governor (parole date kept, conditions altered):*        1

       Parker W-25811

*No action taken by Governor (i.e., parole date left undisturbed):*        0

---

\*   BPT en banc: Schedule a rescission hearing
** BPT en banc: Affirmed release date; Released
***BPT en banc: Schedule a rescission hearing; Release Date affirmed; In Decision Review
^   BPT en banc: Schedule a Rescission hearing; Release date affirmed. Released

350

# 1999

**Total number of life parole consideration hearings:**      1936

**Initial hearings:**          427
**Subsequent hearings:**      1509

**Proposed suitability decisions:**      21

Amaro D-69421
Bowie D-95261
Capistran D-12962
Cray B-89640
Davis C-55468
Harmon C-56404
Hinkles C-05011
Houston W-15036
Leturgey C-13550
Lewis B-87458
Marquez C-24523
Martinez C-61422
Martinez C-61422
Miller C-51648
Morrall C-69912
Rodriguez C-66666
Sawvell C-39140
Sawvell C-39140
Simmons C-17460
Smith W-15143
Viray C-51410
Rosenkrantz D-34119 (court-ordered grant)

**Proposed suitability decisions made effective:**      13

Barrientez D-29258
Capistran D-12962
Davis C-55468
Gallegos E-52064
Ledesma C-48212
McCoy C-31684
Mendoza C-54559
Miller C-51648
Morrall C-69912
Powell C-70394

**351**

**1999, continued**

**Proposed suitability decisions** made effective:   (continued)
> Rosenkrantz D-34119
> Woods C-33998
> Zheng D-42837

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

> Barrientez D-29258
> Capistran D-12962
> Davis C-55468
> Ledesma C-48212
> Mendoza C-54559
> Miller C-51648
> Morrall C-69912
> Powell C-70394
> Rosenkrantz D-34119
> Woods C-33998

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

> Gallegos E-52064
> Gocke C-05672
> McCoy C-31684
> Minor C-25542
> Sylve C-77097
> Zheng D-42837

*Reversed by Governor:*      10

> Barrientez D-29258
> Capistran D-12962
> Davis C-55468
> Ledesma C-48212
> Mendoza C-54559
> Miller C-51648
> Morrall C-69912
> Powell C-70394
> Rosenkrantz D-34119
> Woods C-33998

**352**

## 1999, continued

*Referred en banc to BPT by Governor:*        6

> Gallegos E-52064#
> Gocke C-05672#
> McCoy C-31684*
> Minor C-25542#
> Sylve C-77097*
> Zheng D-42837*

*Modified by Governor (parole date kept, conditions altered):*        0

*No action taken by Governor (i.e., parole date left undisturbed):*        0

---

*BPT en banc: Schedule a rescission hearing
#BPT en banc: Release date vacated
#Gallegos: Granted at next hearing; Released.
#Gocke: Deceased
#Minor: Granted at next hearing; In Decision Review
*McCoy: Release date affirmed at rescission hearing; Released
*Selve: Release date affirmed at rescission hearing; Released

353

## 1998

**Total number of life parole consideration hearings: 2170**

   Initial hearings:   515
   Subsequent hearings:  1655

**Proposed suitability decisions: 38**

   Angulo E-46812
   Barrientez D-29258
   Basden C-02645
   Black C-90537
   Brown C-88184
   Butts B-69675
   Caldwell C-20280
   Cloud D-78884
   Davis E-00026
   Dominguez C-01633
   Donaldson C-90542
   Evans B-86808
   Frias B-90588
   Gallegos E-52064
   Howell D-15107
   Jones B-78822
   Lawrence D-28523
   Ledesma C-48212
   Maiden B-13044
   Martinez C-80150
   Martinez C-80150
   Mason E-12189
   Maynard C-08737
   McClary W-13181
   McCoy C-31684
   Mendoza C-54559
   Moya E-49553
   Peralo D-06447
   Powell C-70394
   Samora C-20794
   Sarmiento D-20964
   Saunders B-15336
   Sawvell C-39140
   Tucker B-82832
   Wade W-15797

354

## 1998, continued

**Proposed suitability decisions:** (continued)
　　　　Weiler C-23799
　　　　Woods C-33998
　　　　Zheng D-42837

**Proposed suitability decisions made effective:**　　　　　20

　　　　Alvarez D-49443
　　　　Angulo E-46812
　　　　Caldwell C-20280
　　　　Clark C-42792
　　　　Cloud D-78884
　　　　Davis E-00026
　　　　Donaldson C-90542
　　　　Frias B-90588
　　　　Howell D-15107
　　　　Jones B-78822
　　　　Lawrence D-28523
　　　　McClary W-13181
　　　　Moya E-49553
　　　　Peralo D-06447
　　　　Samora C-20794
　　　　Sarmiento D-20964
　　　　Saunders B-15336
　　　　Tucker B-82832
　　　　Wade W-15797
　　　　Weiler C-23799

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

　　　　Caldwell C-20280
　　　　Clark C-42792
　　　　Donaldson C-90542
　　　　Frias B-90588
　　　　Jones B-78822
　　　　McClary W-13181
　　　　Peralo D-06447
　　　　Sarmiento D-20964
　　　　Saunders B-15336
　　　　Taylor B-70421
　　　　Tucker B-82832
　　　　Wade W-15797
　　　　Weiler C-23799
　　　　Woods W-30326

355

## 1998, continued

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

    Alvarez D-49443
    Angulo E-46812
    Angulo-Rodriguez W-36664
    Cloud D-78884
    DuBose C-69055
    Hatter D-09577
    Howell D-15107
    Moya E-49553
    Pham C-63503
    Reilly C-89603
    Samora C-20794
    Tillman C-04085
    Walker C-64776
    Yarbrough C-58618
    Young B-61435
    Young W-28077

*Reversed by Governor:*    3

    Frias B-90588
    McClary W-13181
    Weiler C-23799

*Referred en banc to BPT by Governor:*    3

    Alvarez D-49443**
    Howell D-15107**
    Weiler C-23799**

*Modified by Governor (parole date kept, conditions altered):*    3

    Clark C-42792
    Taylor B-70421
    Walker C-64776

---

**BPT en banc:  Affirmed release date: Released

356

## 1998, continued

*No action taken by Governor (i.e., parole date left undisturbed):*   23

    Angulo E-46812
    Angulo-Rodriguez W-36664
    Caldwell C-20280
    Cloud D-78884
    Donaldson C-90542
    DuBose C-69055
    Hatter D-09577
    Jones B-78822
    Martinez W-17365
    Moya E-49553
    Peralo D-06447
    Pham C-63503
    Reilly C-89603
    Samora C-20794
    Sarmiento D-20964
    Saunders B-15336
    Tillman C-04085
    Tucker B-82832
    Wade W-15797
    Woods W-30326
    Yarbrough C-58618
    Young B-61435
    Young W-28077

**357**

# 1997

**Total number of life parole consideration hearings:**    2260

> Initial hearings:        647
> Subsequent hearings:      1613

**Proposed suitability decisions:**    19

> Alvarez D-49443
> Angulo-Rodriguez W-36664
> Castillo C-11209
> Cayton C-15497
> Clark C-42792
> Fisher C-46339
> Frias B-90588
> Hatter D-09577
> Holmes C-07712
> Hummer D-85633
> Martinez W-17365
> Meek  C-49113
> Rodriguez C-66666
> TaylorB-70421
> Walker C-64776
> Williams C-18101
> Woods W-30326
> Yates C-32056
> Young B-61435

**Proposed suitability decisions made effective:**    19

> Angulo-Rodriguez W-36664
> Bates D-83588
> Camou C-19169
> Carter C-28888
> Cayton C-15497
> Contreras W-26443
> Figueroa C-18047
> Fisher C-46339
> Frazier C-53946
> Hatter D-09577
> Holmes C-07712
> Hummer D-85633
> Martinez W-17365

**358**

## 1997, continued

**Proposed suitability decisions made effective:** (continued)

    Meek  C-49113
    Rodriguez C-66666
    Vargas B-35042
    Williams C-18101
    Yates C-32056
    Young W-28077

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

    Bates D-83588
    Camou C-19169
    Carter C-28888
    Contreras W-26443
    Figueroa C-18047
    Fisher C-46339
    Frazier C-53946
    Hatter D-09577
    Martinez W-17365
    Rodriguez C-66666
    Vargas B-35042
    Williams C-18101
    Yates C-32056
    Young W-28077

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

    Ballard C-15996
    Cayton C-15497
    Cazares C-47416
    Cobb C-86718
    Correa C-19490
    Hecker C-65520
    Holmes C-07712
    Lusk W-18231
    Meek C-49113
    Rodriguez C-34857
    Weir C-68889

*Reversed by Governor:*    1

    Rodriguez C-66666

**359**

## 1997, continued

*Referred en banc to BPT by Governor:*          2

      Hecker C-65520*
      Zamora B-83998*

*Modified by Governor (parole date kept, conditions altered):*          1

      Williams C-18101

*No action taken by Governor (i.e., parole date left undisturbed):*          23

      Ballard C-15996
      Bates D-83588
      Camou C-19169
      Carter C-28888
      Cayton C-15497
      Cazares C-47416
      Clemente C-06076
      Cobb C-86718
      Contreras W-26443
      Correa C-19490
      Figueroa C-18047
      Fisher C-46339
      Frazier C-53946
      Hatter D-09577
      Holmes C-07712
      Lusk W-18231
      Martinez W-17365
      Meek C-49113
      Rodriguez C-34857
      Vargas B-35042
      Weir C-68889
      Yates C-32056
      Young W-28077

---

*BPT en banc: Schedule a rescission hearing; Date rescinded

**360**

## 1996

**Total number of life parole consideration hearings:**    2273

> **Initial hearings:**       569
> **Subsequent hearings:**    1704

**Proposed suitability decisions:**    17

> Bates D-83558
> Camou C-19169
> Carter C-28888
> Cochran C-07955
> Figueroa C-18047
> Fransway B-95598
> Hart C-70436
> Howell D-15107
> Ledesma C-48212
> Moreno C-20413
> Owen C-63676
> Racca D-98573
> Rosenkrantz D-34119
> Simmons C-15316
> Vargas B-35042
> Yarbrough C-58618
> Young W-28077

**Proposed suitability decisions made effective:**    8

> Cochran C-07955
> Garcia D-00236
> Ledesma C-48212
> Lusk W-18231
> Macioce W-22468
> Owen C-63676
> Simmons C-15316
> Yarbrough C-58618

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

> Cochran C-07955
> Ledesma C-48212
> Lusk W-18231
> Owen C-63676

**361**

## 1996, continued

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:* (continued)
     Simmons C-15316
     Yarbrough C-58618

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

     Aris W-28867
     Clemente C-06076
     Garcia D-00236
     Lewis W-17835
     Lollis W-18963
     Puzio C-39576
     Santo C-67776
     Sires D-07494
     Tong C-33662
     Zamora B-83998

*Reversed by Governor:*    2

     Ledesma C-48212
     Owen C-63676

*Referred en banc to BPT by Governor:*    0

*Modified by Governor (parole date kept, conditions altered):*    0

*No action taken by Governor (i.e., parole date left undisturbed):*    13

     Aris W-28867
     Cochran C-07955
     Garcia D-00236
     Lewis W-17835
     Lollis W-18963
     Lusk W-18231
     Macioce W-22468
     Miller C-40123
     Puzio C-39576
     Santo C-67776
     Simmons C-15316
     Sires D-07494
     Yarbrough C-58618

362

# 1995

**Total number of life parole consideration hearings:**     2123

    **Initial hearings:**          397
    **Subsequent hearings:**    1726

**Proposed suitability decisions:**          9

    Cobb C-86718
    Damazo C-27664
    DuBose C-69055
    Garcia D-00236
    Jackson C-12224
    Lusk W-18231
    Martinez C-89969
    Mendoza C-54559
    Moreno D-13445

**Proposed suitability decisions made effective:**     5

    Cobb C-86718
    Damazo C-27664
    DuBose C-69055
    Martinez C-89969
    Moreno D-13445

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

    Cobb C-86718
    DuBose C-69055
    Martinez C-89969
    Moreno D-13445

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

    Campbell C-79105
    Clemente C-06076
    Damazo C-27664
    Davis B-79497
    Fischer C-85124
    Garnett D-13405
    Kim, D. D-52181
    Kim, Y. D-52185

**363**

## 1995, continued

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:* (continued)
>    Miller C-40123
>    Morris C-14718
>    Ramos C-74450
>    Smith W-15143

*Reversed by Governor:*        2

>    Moreno D-13445
>    Vasquez C-17349

*Referred en banc to BPT by Governor:*        7

>    Clemente C-06076**
>    Garnett D-13405**
>    Guerrero C-47910*
>    Kim, D. D-52181*
>    Kim, Y. D-52185*
>    Ramos C-74450*
>    Smith W-15143*

*Modified by Governor (parole date kept, conditions altered)::*        0

*No action taken by Governor (i.e., parole date left undisturbed):*        8

>    Campbell C-79105
>    Cobb C-86718
>    Damazo C-27664
>    Davis B-79497
>    DuBose C-69055
>    Fischer C-85124
>    Martinez C-89969
>    Morris C-14718

---

\* BPT en banc: Schedule a rescission hearing; date rescinded
\*\*BPT en banc: Schedule a rescission hearing; Date affirmed; released

**364**

## 1994

**Total number of life parole consideration hearings:**          1963

> **Initial hearings:**          328
> **Subsequent hearings:**          1635

**Proposed suitability decisions:**          16

> Angulo E-46812
> Aris W-28867
> Gibson C-27414
> Kim, D. D-52181
> Kim, Y. D-52185
> Lewis W-17835
> Liu D-64422
> McClendon C-55324
> Minor C-25542
> Owen C-63676
> Peralo D-06447
> Pham C-63503
> Reilly C-89603
> Tillman C-04085
> Vasquez C-17349
> Williams C-18101

**Proposed suitability decisions made effective:**   9

> Aris W-28867
> Kim, D. D-52181
> Kim, Y. D-52185
> Lawrence W-19366
> Lewis W-17835
> Pham C-63503
> Reilly C-89603
> Tillman C-04085
> Vasquez C-17349

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

> Aris W-28867
> Lawrence W-19366
> Lewis W-17835
> Pham C-63503
> Reilly C-89603

26

**365**

## 1994, continued

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:* (continued)
> Tillman C-04085
> Vasquez C-17349

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

> Cochran C-07955
> Ellison C-49672
> Guerrero C-47910
> O'Connell C-47331
> Puzio C-39576
> Rodriguez C-66666
> Santistevan C-42657

*Reversed by Governor:*                 1                                    3

> Lawrence W-19366

*Referred en banc to BPT by Governor:*         3

> Murr B-87723*
> O'Connell C-47331*
> Rodriguez C-66666*

*Modified by Governor (parole date kept, conditions altered):*         0

*No action taken by Governor (i.e., parole date left undisturbed):*         8

> Aris W-28867
> Ellison C-49672
> Gallegos W-14786
> Lewis W-17835
> Pham C-63503
> Santistevan C-42657
> Sires D-07494
> Tillman C-04085

---

*BPT en banc:  Schedule a rescission hearing; Date rescinded

366

## 1993

**Total number of life parole consideration hearings:**            1614

       Initial hearings:       355
       Subsequent hearings:    1259

**Proposed suitability decisions:**            21

      Casey C-05591
      Cazares C-47416
      Clark C-42792
      Ellison C-49672
      Gallegos W-14786
      Garnett D-13405
      Godinez C-93070
      Gray C-30549
      Jackson C-12224
      Lawrence W-19366
      Lusk W-18231
      Martinez C-61422
      Miller C-40123
      Sanders C-57120
      Santo C-67776
      Simmons C-17460
      Sires D-07494
      Soto C-89195
      Torres C-42806
      Walker C-64776
      Watkins C-59172

**Proposed suitability decisions made effective:**    14

      Cazares C-47416
      Ellison C-49672
      Gallegos W-14786
      Garnett D-13405
      Gray C-30549
      Jackson C-12224
      Lusk W-18231
      Miller C-40123
      Morrall C-69912
      Santo C-67776
      Sires D-07494

**367**

## 1993, continued

Proposed suitability decisions made effective: (continued)
> Soto C-89195
> Torres C-42806
> Walker C-64776

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

> Cazares C-47416
> Gallegos W-14786
> Gray C-30549
> Jackson C-12224
> Lusk W-18231
> Miller C-40123
> Sires D-07494
> Soto C-89195
> Torres C-42806

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

> Ayers C-22658
> Camacho C-36929
> Dayan C-24446
> Figueroa C-18047
> Gallegos W-14786
> Hernandez C-03015
> Hill C-14256
> Johnson C-46160
> Leanos C-10743
> Lewis B-91616
> Lytle C-04775
> Mahone C-11353
> Murr B-87723
> Navarro C-10016
> Pearson C-38254
> Richardson C-68903
> Rodriguez C-58188
> Rodriguez C-66666
> Rodriguez C-29915
> Rosses W-12329
> Timoteo C-25252
> Tong C-33662
> Walker C-64776

**368**

## 1993, continued

*Reversed by Governor:*      3

> Jackson C-12224
> Lusk W-18231
> Soto C-89195

*Referred en banc to BPT by Governor:*      5

> Dayan C-24446**
> Figueroa C-18047*
> Hernandez C-03015*
> Rosses W-12329*
> Tong C-33662***

*Modified by Governor (parole date kept, conditions altered):*      1

> Gallegos W-14786

*No action taken by Governor (i.e., parole date left undisturbed):*      15

> Ayers C-22658
> Camacho C-36929
> Cazares C-47416
> Gray C-30549
> Hill C-14256
> Johnson C-46160
> Lytle C-04775
> Miller C-40123
> Navarro C-10016
> Pearson C-38254
> Richardson C-68903
> Rodriguez C-58188
> Rodriguez C-29915
> Timoteo C-25252
> Torres C-42806

---

\*    BPT en banc:  Schedule a rescission hearing; Date rescinded
\*\*   BPT en banc:  Affirmed release date; Released
\*\*\*  BPT en banc:  Schedule rescission hearing; Date affirmed; Released

369

## 1992

**Total number of life parole consideration hearings:**     1739

      **Initial hearings:**          312
      **Subsequent hearings:**     1739

**Proposed suitability decisions:**     27

      Ballard C-15996
      Betancourt C-24292
      Chavez C-20706
      Chavez C-20706
      Fahey B-70938
      Ferrier C-20882
      Johnson C-46160
      Kopp C-53698
      Lang B-60960
      Laundry C-28801
      Lollis W-18963
      McIntosh C-51644
      Moreno D-13445
      Morris C-14718
      Pfost C-35985
      Portune B-81309
      Portune B-81309
      Riel C-94314
      Roberts B-86717
      Robinson C-36789
      Rodriguez C-34857
      Rodriguez C-58188
      Simmons C-15316
      Stevens C-4412
      Taylor B-70421
      Waiwaiole C-57545
      Williams W-16357

**Proposed suitability decisions made effective:**     16

      Ballard C-15996
      Betancourt C-24292
      Connelly C-72297
      Fahey B-70938
      Ferrier C-20882

370

## 1992, continued

**Proposed suitability decisions made effective:** (continued)

    Johnson C-46160
    Kopp C-53698
    Lollis W-18963
    Morris C-14718
    Pfost C-35985
    Robinson C-36789
    Rodriguez C-58188
    Rodriguez C-34857
    Stevens C-44412
    Sylve C-77097
    Waiwaiole C-57545

*Decisions forwarded to Governor pursuant to Penal Code section 3041.2:*

    Connelly C-72297
    Johnson C-46160
    Lollis W-18963
    Morris C-14718
    Pfost C-35985
    Robinson C-36789
    Rodriguez C-34857
    Stevens C-44412
    Sylve C-77097
    Waiwaiole C-57545

*Decisions forwarded to Governor pursuant to Penal Code section 3041.1:*

    Astorga-Murga C-14352
    Betancourt C-24292
    Butts B-69675
    Cobos B-28337
    Gasaway C-26528
    Gonzales C-99928
    Grisso C-02892
    Johnson B-29806
    Lovelace C-10437
    O'Hare C-53803
    Rowland C-02186
    Shelton W-13679

**371**

## 1992, continued

*Reversed by Governor:*        2

>     Pfost C-35985
>     Stevens C-44412

*Referred en banc to BPT by Governor:*        3

>     Butts B-69675*
>     Cobos B-28337*
>     Grisso C-02892*

*Modified by Governor (parole date kept, conditions altered):*        1

>     Gasaway C-26528

*No action taken by Governor (i.e., parole date left undisturbed):*        16

>     Astorga-Murga C-14352
>     Betancourt C-24292
>     Connelly C-72297
>     Gonzales C-99928
>     Johnson B-29806
>     Johnson C-46160
>     Lollis W-18963
>     Lovelace C-10437
>     Morris C-14718
>     O'Hare C-53803
>     Robinson C-36789
>     Rodriguez C-34857
>     Rowland C-02186
>     Shelton W-13679
>     Sylve C-77097
>     Waiwaiole C-57545

---

* BPT en banc:  Schedule a rescission hearing; Date rescinded

372

## 1991

**Total number of life parole consideration hearings:**          1726

      **Initial hearings:**          306
      **Subsequent hearings:**          1420

**Proposed suitability decisions made effective:**          54

      Arafiles B-91462
      Ayers C-22658
      Barron C-33124
      Brown B-83501
      Bruce B-78908
      Brydon B-98959
      Burdick B-82439
      Camacho C-36929
      Cecil W-13639
      Chandler D-07980
      Cochran C-07955
      Connelly C-72297
      Connelly C-72297
      Danowski B-81055
      Dumas B-31225
      Fahey B-70938
      Fischer C-85124
      Gaunce B-90043
      Garcia B-93485
      Garfield C-05782
      Gonzales C-99928
      Gonzalez C-65413
      Hamilton C-15869
      Ignacio C-51235
      Jefferson B-99662
      Johnson B-88644
      Macias B-76767
      Mahone C-11353
      Maynard C-08737
      Murr B-87723
      Ortiz C-21046
      Osbon C-17661
      Portune B-81309
      Portune B-81309
      Puzio C-39576

**373**

## 1991, continued

**Proposed suitability decisions made effective:** (continued)

Ramos C-74450
Remeidio C-29967
Robinson C-36789
Rodriguez C-66666
Santistevan C-42657
Schleuter C-15115
Scott B-74497
Sharif-Zada C-75928
Smith C-18727
Stanton C-56482
Sylve C-77097
Vargas B-35042
Veal C-43834
Weir C-68889
Whitespear C-42366
Winrow B-96744
Woo C-14883
Yarbrough C-58618
Yore B-85447

*Reversed by Governor:*        6

Arafiles B-91462
Jefferson B-99662
Johnson B-88644
Vargas B-35042
Veal C-43834
Whitespear C-42366

*Referred en banc to BPT by Governor:*        4

Bratton B-64574*
Johnson B-25186*
Sturges B-51495*
Van Norman B-53539*

*Modified by Governor (parole date kept, conditions altered):*        3

Fischer C-85124
Hewitt B-77844
Ignacio C-51235

* BPT en banc: Schedule a rescission hearing; Date rescinded

196

**374**