# EXHIBIT E

**ORIGINAL**

No. ___S150340___

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In re<br><br>DONALD EVERETT CRONK<br><br>on Habeas Corpus. | No. C053979<br><br>(Superior Court<br>No. 06F06029<br>Sacramento County) |

## PETITION FOR REVIEW

SUPREME COURT
**FILED**

FEB 20 2007

Frederick K. Ohlrich Clerk

DEPUTY

───────────────────────────

Petition from the Judgment of the Court of Appeal,
Third Appellate District,
Denying Petition for Writ of Habeas Corpus

───────────────────────────

RECEIVED

FEB 2 0 2007

CLERK SUPPLY

MICHAEL SATRIS, SBN 67413
CARRIE KOJIMOTO, SBN 152824
Law Offices of Michael Satris
Post Office Box 337
Bolinas, CA. 94924
Telephone:  (415) 868-9209
Fax:        (415) 868-2658
Email:      satris@sbcglobal.net

Attorneys for Petitioner
DONALD EVERETT CRONK

# TOPICAL INDEX

Page #

TABLE OF AUTHORITIES ................................................................. ii

PETITION FOR REVIEW ................................................................. 1

QUESTIONS PRESENTED ................................................................. 2

STATEMENT OF THE CASE ................................................................. 3

STATEMENT OF THE FACTS ................................................................. 4

    A.  The Commitment Offense. ........................................ 4

    B.  The Board's 2005 Decision. ........................................ 5

ARGUMENT ................................................................. 6

THE COURT SHOULD GRANT REVIEW TO
PROTECT CRONK FROM THE STATE'S
ARBITRARY AND CAPRICIOUS DENIAL OF
PAROLE, AND TO MAKE CLEAR THAT FOREVER
DENYING PAROLE BASED ON THE IMMUTABLE
FACTORS OF THE OFFENSE AND PRIOR RECORD
IN THE FACE OF AN ENDURING SHOWING OF
REFORM AND REHABILITATION IS CONTRARY
TO THE PRINCIPLES OF THE INDETERMINATE
SENTENCING LAW AND DUE PROCESS. ........................... 6

    A.  The Board's Repeated Rote Reliance On Cronk's
    Commitment Offense And Prior Criminal History
    Without Any Evidence That These Factors Show
    That His Release 25 Years Later Poses An
    Unreasonable Risk To Public Safety Is A
    Violation Of His Constitutional Due Process
    Rights Under The Fourteenth Amendment. ............... 6

    B.  There Was No Evidence To Support The Board's
    2005 Denial Of Parole. ............................................ 12

C.  The Board Has Abused Its Authority By Turning
    The Exception Of Parole Deferral For An
    Indeterminate Life Prisoner Into The Rule Based
    On Arbitrary And Capricious Findings. ....................19

D.  The Board's Practice Of Making Parole Denials
    The Norm And Grants The Rare Exception Is A
    Product Of Its Institutional Bias That Deprives
    Cronk Of His Constitutional Due Process Rights. ....21

E.  This Court Should Grant Review To Determine
    Whether the State's Refusal to Parole Cronk
    Constitutes Cruel and Unusual Punishment Under
    the State and Federal Constitutions. ..........................22

CONCLUSION ....................................................................................24

WORD COUNT CERTIFICATE

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Biggs v. Terhune* (9th Cir. 2003)
    334 F.3d 910 ................................................................9, 11, 15

*Ewing v. California* (2003)
    538 U.S. 11...............................................................23

*Hawks v. Hamlet* (N.D. Cal. 2006)
    2006 WL 3147693 ....................................................18

*Irons v. Carey* (9th Cir. 2005)
    408 F.3d 1165 ...........................................................9

*Irons v. Warden of California State Prison-Soledad* (E.D. Cal. 2005)
    358 F.Supp.2d 936 ................................................9, 11

*Martin v. Marshall* (N.D. Cal. 2006)
    431 F.Supp.2d 1038 ............................................9, 22

*Martin v. Marshall* (N.D. Cal. 2006)
    448 F.Supp.2d 1143 ...................................................9

*O'Bremski v. Maas* (9th Cir. 1990)
    915 F.2d 418 ............................................................22

*Rosenkrantz v. Marshall* (C.D. Cal. 2006)
    444 F.Supp.2d 1063 ............................................9, 18

*Sanchez v. Kane* (C.D. Cal. 2006)
    444 F.Supp.2d 1049 ...................................................9

*Sass v. California Board of Prison Terms* (9th Cir. 2006)
    431 F.3d 1123 ...........................................................9

*Schware v. Bd of Bar Examiners* (1957)
    353 U.S 232, 77 S.Ct. 752, 1 L.Ed.2d 796 ...............10

*Solem v. Helm* (1983)
  463 U.S. 277.................................................................................23

*Superintendent v. Hill* (1985)
  472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 ........................10

*Yick Wo v. Hopkins* (1866)
  118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 200 ................................22

<u>State Cases</u>

*In re Andrade* (2006)
  141 Cal.App.4th 807 ......................................................................7

*In re Dannenberg* (2005)
  34 Cal.4th 1061 ...................................... 6, 11, 12, 16, 19, 21, 22

*In re Elkins* (2006)
  144 Cal.App.4th 475 .................................................................8, 15

*In re Lee* (2006)
  143 Cal.App.4th 1400 ....................................................................8

*In re Ramirez* (2001)
  94 Cal.App.4th 549 .................................................................7, 20

*In re Rosenkrantz* (2002)
  29 Cal.4th 616 ........................................................6, 7, 17, 20

*In re Scott* (2004)
  119 Cal.App.4th 871 [*Scott I*] .................................11, 16, 17, 18

*In re Scott* (2005)
  133 Cal.App.4th 573 [*Scott II*] ...............................................8, 18

*In re Weider* (2006)
  145 Cal.App.4th 570 ...............................................................8, 19

*People v. Dillon* (1983)
  34 Cal.3d 441 .............................................................................23

# Constitutions

## United States Constitution

Eighth Amendment ............................................................2
Fourteenth Amendment ..........................................2, 6, 11

## California Constitution

Article I, § 7 .....................................................................2
Article I, § 17 ...................................................................2

# California Statutes

Penal Code § 3041 ..............................................2, 15, 19, 20, 22
    § 3041 (a)..............................................................19
    § 3041 (b) ............................................................19
    § 3042 ..................................................................18
    § 3043 ..................................................................18

# California Code of Regulations

Title 15, § 2402 ...............................................................12
Title 15, § 2402 (a).........................................................20
Title 15, § 2402 (c)(1) ....................................................17
Title 15, § 2402 (d)(4).....................................................17

# California Rules of Court

Rule 8.500 (b)(1)...............................................................6
Rule 8.504 (b)(4)................................................................1

No. _____

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In re | No. C053979 |
| DONALD EVERETT CRONK | (Superior Court No. 06F06029 |
| on Habeas Corpus. | Sacramento County) |

## PETITION FOR REVIEW

TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE CALIFORNIA SUPREME COURT:

Petitioner DONALD EVERETT CRONK (hereafter "Cronk"), through his counsel, petitions this Court for review of the decision of the Court of Appeal, Third Appellate District, filed February 8, 2007, summarily denying his petition for writ of habeas corpus challenging his parole denial. A copy of the order is appended hereto pursuant to California Rules of Court, rule 8.504 (b)(4).

## QUESTIONS PRESENTED

Does the denial of parole to Cronk at his fifth hearing in 2005 conform to: 1) the constitutional demands of due process that require "some evidence" to support denial of parole and otherwise outlaws arbitrary decisions (U.S. Const., Amend. 14), when Cronk's record of change and rehabilitation over the course of the last 25 years is both remarkable and indisputable; 2) the legislative scheme set forth in Penal Code section 3041 that directs the Board of Parole Hearings (hereafter "Board") to normally set prison terms for lifers when they become eligible for parole and to reserve denial of parole for the exceptional case where parole would pose an unreasonable risk to public safety, and 3) Cronk's right to be free of cruel and unusual punishment (U.S. Const., Amends. 8, 14;  Cal. Const., art. I §§ 7, 17)?

\* \* \* \* \* \*

## STATEMENT OF THE CASE

Cronk is a prisoner at San Quentin State Prison, who challenges his continued incarceration following his conviction for first degree murder committed in 1980 and commitment to prison for a term of 25 years to life. Since becoming eligible for parole on March 2, 1998, Cronk has been denied five times despite indisputable evidence of remarkable change and rehabilitation over the course of the last 25 years.

On June 29, 2006, Cronk filed a petition for writ of habeas corpus in Sacramento County Superior Court (*In re Cronk*, No. 06F06029), challenging the Board's refusal to set a parole date for him, including its most recent denial of parole at his hearing on September 14, 2005. Cronk alleged the Board's continued reliance on the immutable factors of his commitment offense and prior criminal history to deny parole violates his due process rights under the California and United States Constitution. He asserted his case exemplifies the Board's biased practice of rarely finding a life prisoner suitable for parole no matter how long he has been imprisoned and how compelling may be the circumstances that show through maturity and rehabilitation that he could be safely released. On August 28, 2006, the petition was denied.

On October 27, 2006, Cronk filed a petition for writ of habeas corpus in the Court of Appeal. (*In re Cronk*, No. C053979.) He realleged the allegations in his trial court petition and his prayer for relief, and submitted the trial court petition, its exhibits, and the trial court order with his appellate petition.

3

On December 4, 2006, the appellate court directed respondent to serve and file a written opposition to the petition. On January 18, 2007, after receiving an extension of time, respondent filed an informal opposition. On February 5, 2007, Cronk filed his reply.

On February 8, 2007, the Court of Appeal summarily denied the petition.

## STATEMENT OF THE FACTS

A. <u>The Commitment Offense</u>:

The commitment offense occurred on December 19, 1980. Cronk had become addicted to cocaine, after his employer introduced him to the drug. Cronk's wife left him and he eventually lost his job. Cronk and his co-defendant, Glen Meyer, owed ten thousand dollars to their drug dealer. Meyer proposed committing a robbery to get the money needed to pay off their debt. They planned to break into the house of James Allen, a jeweler, ransack it for money and personal property, and then accost Allen when he came home to take his jewelry. A third crime partner was to call Cronk and Meyer from a pay phone and warn them when Allen was coming. However, the confederate failed to alert Cronk and Meyer. Allen, who sensed something was amiss when he came home, entered with his gun drawn and confronted Meyer. Cronk, who was in another part of the house, heard noises and came upon Meyer and Allen. Allen immediately turned and fired at Cronk six times, and was reaching for another gun. Cronk, who was hit in the torso and in the arm,

4

instinctively fired once through his pocket as he fell to the ground,
fatally wounding Allen.  Cronk collapsed outside and lost
consciousness.  Meyer, meanwhile, took the victim's gun, briefcase,
and ring.  He then grabbed Cronk and fled.

B. The Board's 2005 Decision.

At Cronk's parole consideration hearing on September 14,
2005, the Board denied him parole for one year primarily based on the
commitment offense.  The Board found "the offense was carried out
in a dispassionate and calculated manner" and that the "motive for the
crime was inexplicable or very trivial in relationship to the offense."
It found Cronk had not been adequately punished and needed to serve
a longer time in prison.  The Board also cited "[Cronk's] escalating
pattern of criminal conduct or violence," based on his involvement in
robberies prior to the commitment offense, and the district attorney's
opposition to Cronk's release.  In addition, the Board made the
following findings:

> The prisoner needs therapy, self-help, and
> programming in order to further face, discuss,
> understand, and cope with stress in a nondestructive
> manner, as well, to get further insight into the crime.
> Until further progress is made, the prisoner
> continues to be unpredictable and a threat to others.

\* \* \* \* \* \*

5

ARGUMENT

THE COURT SHOULD GRANT REVIEW TO
PROTECT CRONK FROM THE STATE'S
ARBITRARY AND CAPRICIOUS DENIAL OF
PAROLE, AND TO MAKE CLEAR THAT FOREVER
DENYING PAROLE BASED ON THE IMMUTABLE
FACTORS OF THE OFFENSE AND PRIOR RECORD
IN THE FACE OF AN ENDURING SHOWING OF
REFORM AND REHABILITATION IS CONTRARY
TO THE PRINCIPLES OF THE INDETERMINATE
SENTENCING LAW AND DUE PROCESS.

A.    The Board's Repeated Rote Reliance On Cronk's
      Commitment Offense And Prior Criminal History
      Without Any Evidence That These Factors Show
      That His Release 25 Years Later Poses An
      Unreasonable Risk To Public Safety Is A Violation
      Of His Constitutional Due Process Rights Under
      The Fourteenth Amendment.

This Court will order review of a decision by a Court of Appeal
"when necessary to secure uniformity of decision or to settle an
important question of law." (Cal. Rules of Court, rule 8.500, subd.
(b)(1).) This petition presents such a necessity, as the denial of relief
in this case conflicts with recent appellate court decisions applying
this Court's benchmark decisions on the power of the parole authority
to deny parole, *In re Rosenkrantz* (2002) 29 Cal.4th 616 and *In re
Dannenberg* (2005) 34 Cal.4th 1061. In *Dannenberg, supra*, 34
Cal.4th at pp. 1071, 1084, this Court held that the Board may deny
parole based on particular circumstances of the individual's
commitment offense only if it "reasonably believes" that they show
the inmate poses a *continuing* "unreasonable risk of danger to society

6

if released from prison." Moreover, "the gravity of the commitment offense ... may be a sufficient basis for denying a parole application, [only] so long as the Board does not fail to consider all other relevant factors." (*In re Ramirez* (2001) 94 Cal.App.4th 549, 569; accord, *In re Rosenkrantz*, *supra*, 29 Cal.4th at pp. 660, 677.)

As noted by one justice regarding the evolving jurisprudence surrounding review of habeas challenges to parole denials:

> The recent decisions in this area admittedly are not all in harmony. The differences in approach which conflicting decisions reflect may indicate the need for Supreme Court intervention and clarification [to protect against] automatic acceptance of every parole denial simply because the Board repeats the incantation that the commitment offense was a callous crime.

(*In re Andrade* (2006) 141 Cal.App.4th 807, 823, fn. 3 (conc. & dis. opn. of Pollak, J.).)

Here, the 2005 denial of parole based on the Board's repeated "incantation that the commitment offense was a callous crime" is emblematic of the Board's arbitrary and capricious consideration of Cronk over the years. The denial deprived Cronk of due process because the Board arbitrarily failed to assess his parole risk based upon all the relevant factors of his individual case and because it relied on the static facts of the commitment offense and criminal history in the face of Cronk's showing over a prolonged period of exemplary behavior and rehabilitation in prison. Now 50 years old, Cronk is far from the immature and desperately strung-out cocaine addict who posed a danger to public safety a quarter of a century ago.

7

His correctional counselors, work supervisors, and the psychological
staff who evaluate him for the Board have all commended his
remarkable positive attitude and behavior.  The evidence
overwhelmingly supported a finding of his suitability for parole, and
there was no rational basis for concluding otherwise.

A number of state appellate courts have endorsed Cronk's
position that over time, in light of the prisoner's record of
rehabilitation, the predictive value of those unchanging stale factors
about his commitment offense and pre-offense record is nil and the
authorities' continuous reliance on them to repeatedly deny parole
violates due process.  (See, e.g., *In re Elkins* (2006) 144 Cal.App.4th
475, 498 ("Given the lapse of 26 years and the exemplary
rehabilitative gains made by Elkins in that time, continued reliance on
the[] aggravating facts of the crime no longer amount to 'some
evidence' supporting denial of parole"); *In re Weider* (2006) 145
Cal.App.4th 570, 589 ("the fact that there were multiple victims,
which will never change, cannot be sufficient to deny parole to
Weider forever"); *In re Lee* (2006) 143 Cal.App.4th 1400, 1412
("Simply from the passing of time, Lee's crimes almost 20 years ago
have lost much of their usefulness in foreseeing the likelihood of
future offenses"); see also *In re Scott* (2005) 133 Cal.App.4th 573,
595 [*Scott II*].)

The federal courts are similarly addressing the difficult
constitutional questions raised by the Board's practice of parole
denials based simply on the commitment offense in the face of
indisputable evidence of rehabilitation.  (Compare the majority and

dissenting opinions in *Sass v. California Board of Prison Terms* (9th Cir. 2006) 431 F.3d 1123; see also *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, 916-917 (hereafter *Biggs*); *Irons v. Warden of California State Prison-Soledad* (E.D. Cal. 2005) 358 F.Supp.2d 936, app. pending, sub nom. *Irons v. Carey* (9th Cir. 2005) 408 F.3d 1165; *Martin v. Marshall* (N.D. Cal. 2006) 431 F.Supp.2d 1038, order amended at 448 F.Supp.2d 1143; *Rosenkrantz v. Marshall* (C.D. Cal. 2006) 444 F.Supp.2d 1063, 1083-1085, and *Sanchez v. Kane* (C.D. Cal. 2006) 444 F.Supp.2d 1049.

These federal and state cases call into question whether parole authorities may forever deny an inmate parole based on the immutable facts of the offense and pre-offense history regardless of the evidence of long-standing rehabilitation and reform. As noted by the court in *Irons v. Warden of California State Prison-Solano, supra,* 358 F.Supp.2d at p. 947, "continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole." Where a murderer over a prolonged period of imprisonment "continue[s] to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole," for "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system" in California. (*Biggs, supra,* 334 F.3d at pp. 916-917.) Based on the

9

record of Cronk's 25-year showing of rehabilitation in prison, the continued refusal of the State to release him to parole has now ripened into the due process violation that *Biggs* warned against.

The constitutional due process analysis in *Biggs* was adopted from the "some evidence or otherwise arbitrary" standard set forth by the United States Supreme Court in *Superintendent v. Hill* (1985) 472 U.S. 445 [105 S.Ct. 2768, 86 L.Ed.2d 356] (hereafter *Hill*). *Hill* was derived from a line of cases in which government actions affecting a liberty interest were determined to be arbitrary. One case cited in *Hill, supra*, 472 U.S. at p. 455, was *Schware v. Bd of Bar Examiners* (1957) 353 U.S 232 [77 S.Ct. 752, 1 L.Ed.2d 796] (hereafter *Schware*), which held that New Mexico's denial of a license to practice law based on a finding that the applicant lacked the requisite moral fitness to practice law lacked evidentiary support. New Mexico had so found based on the evidence of the applicant's past membership in the Communist Party, his past use of aliases, and his prior arrest record. The Court found this evidence, which dated back 15 years, did not justify a finding that the applicant was currently morally unfit to practice law. (*Id.* at p. 239.)

*Schware*'s principle, that an individual's due process interest in his liberty is violated when the state deprives that individual of his liberty based on stale evidence of over 15 years ago for which there is no rational connection to a standard that depends upon a present assessment of the individual, is applicable to the Board's denial of parole based on its repeated reliance on the stale, unchanging facts of Cronk's past criminality, in view of his enduring record of remarkable

10

rehabilitative change. To constitute "some" evidence to deny parole, the evidence must reliably establish dangerousness (see *In re Scott* (2004) 119 Cal.App.4th 871, 898-899 [*Scott I*], quoting *Biggs, supra,* 334 F.3d at p. 915) and reasonably lead to that conclusion. Here, the Board posited no reasonable explanation why Cronk's offense and his prior record indicates his *present* danger to the community if released, for the evidence before it made clear that he has addressed the causative factors of the crime and has reformed himself. In sum, these immutable factors no longer constitute evidence of parole unsuitability, and the Board's persistent reliance on them to deny Cronk parole was arbitrary and capricious. (See, e.g., *Biggs, supra,* 334 F.3d at p. 917; *Irons v. Warden of California State Prison-Solano, supra,* 358 F.Supp.2d at p. 947.)

Grant of review here would permit this Court to address the tension between the majority and minority positions in *Dannenberg* in the context of a prisoner who "continue[s] to demonstrate exemplary behavior and evidence of rehabilitation" over the extraordinarily long time that Cronk has. (See *Biggs, supra,* 334 F.3d at pp. 916-917.) This Court should grant review to ensure that the executive administers parole consistent with the basic premise of parole: reformation and redemption is the guiding consideration in determining current risk to public safety. In addition, Cronk's challenge to the State's refusal to parole him bears upon the fundamental fairness of his continued imprisonment and thereby implicates his federal constitutional rights to due process of law. (U.S. Const., Amend. 14.) The protection of individual constitutional

rights provides another compelling basis for grant of review by the
Court

> B.    There Was No Evidence To Support The Board's
>        2005 Denial Of Parole.

The Board must evaluate an individual inmate's suitability for
parole by applying its detailed standards and criteria and taking into
account "all pertinent information and input *about the particular
case*...." (*In re Dannenberg, supra,* 34 Cal.4th at p. 1086, emphasis
in original.) The Board's decisions must be based on individualized
consideration of the factors tending to show a prisoner is suitable or
unsuitable for parole, which are set out in California Code of
Regulations, title 15, section 2402.

Cronk meets the suitability criteria in the controlling
regulations:

- Cronk has no juvenile record and a minimal adult
  criminal record that consisted of one minor property
  offense, and unadjudicated conduct very close to the time
  of the commitment offense.
- Cronk has a stable social history. His siblings and
  friends have kept in contact with him throughout his 25
  years of incarceration, and remain ready and willing to
  help Cronk upon his release. He has developed a broad
  network of community support. He has been in a long-
  term relationship with his fiancée, who owns her own
  Marin County residence and manages a travel agency.

- Cronk has taken responsibility for and is deeply remorseful about his crime. The Life Prisoner Evaluations and Psychological Evaluations have consistently found that he was deeply remorseful about the grief he caused to his victim's family, had taken full responsibility for his criminal actions and addressed their underlying factors. He has repeatedly expressed remorse for the offense at the Board hearings.

- The crime was "the result of significant stress" that had built up as a result of Cronk's cocaine addiction, the loss of his job, the break-up of his marriage, and deep financial debt to drug dealers.

- Cronk's present age of 50 years, together with the maturity and emotional growth shown in the decades since his offense, significantly reduces the probability of recidivism.

- Cronk has realistic parole plans, including marketable skills, several job offers, and a residence with loving support.

The 2005 psychological evaluation reflects the obvious suitability of Cronk for parole and states in pertinent part:

> Given the stability of Mr. Cronk's mental status, his exemplary performance while incarcerated and extensive efforts at rehabilitation, no changes in Mr. Cronk's mental health are anticipated. He has no history of mental illness and no contributory mental problems. His attitude is consistently upbeat and positive. Most importantly, he has no history of

13

violence while incarcerated, and no history of
violence in the community prior to the commission
of his offense. He has shown genuine remorse for
his crime and takes full responsibility for his
actions. He is insightful regarding the factors that
led to his criminal behavior. **There would seem to
be no additional benefit that could accrue to Mr.
Cronk or to the state by his continued
incarceration. Continued incarceration could in
fact, be detrimental to Mr. Cronk's ability to
succeed as a parolee, as it may be creating a
dependency on institutional resources, and
requires continued adaptation to a unique and
extreme environment.** While it is not possible to
predict future behavior with absolute certainty,
based on clinical assessment and review of Mr.
Cronk's records there is no indication that he
represents an increased risk to the community for
future crime, were he to be paroled.

The Board, however, arbitrarily characterized that report as
"inconclusive," and requested a new psychological report be done by
another psychologist.

Cronk has a stellar behavioral record, remaining disciplinary-
free during the entire 25 years of his incarceration. Cronk obtained an
AA degree in Theology and was working on getting a BA through the
prison's affiliation with Ohio University. He had graduated from
Patton University with a Certificate of Ministry in 2005. In 2004 and
2005, he was both an active participant and facilitator of a counseling
course called Incarcerated Men Putting Away Childish Things
(IMPACT). Cronk received a certificate for completing a 29-month
program on domestic violence. From 2002 to the current date, Cronk
trained to be a facilitator of the Man-Alive Program. He was also

involved in the Overcomers Outreach program, which is a religious-oriented 12-step recovery program related to the 12-step program of AA; the Health and Ethics Workshop Program; the Arts in Corrections program; and T.A.P.S., a national military survivor peer support network.  Cronk received 16 laudatory chronos for his participation, contributions and faithful attendance in these programs.

The Board's reasoning that the murder was especially heinous because it was carried out in a dispassionate and calculated manner is capricious, because the shooting occurred when Cronk, after being shot at six times and hit by gunfire twice, acted out of a fear and survival instinct when he reflexively fired back at Allen.  The Board's reasoning "that this was just too heinous" because Cronk and his cohorts waited for Allen to come home to rob him of his ring rather than "just go to the house and take things" may show that the robbery was particularly egregious, but that is not a basis to conclude that the murder was particularly egregious.  (See, e.g., *In re Elkins*, *supra*, 144 Cal.App.4th at p. 496 [distinguishing "an especially heinous, atrocious or cruel *robbery*" from "an especially brutal *first degree murder*"] (italics in original).)

Moreover, the Board's conclusion that "at this stage 25 years [of incarceration] is [in]sufficient" was divorced from the overwhelming evidence of Cronk's suitability "runs contrary to the rehabilitative goals espoused by the prison system ...." (*Biggs*, *supra*, 334 F.3d at p. 917.)  It also runs contrary to Penal Code section 3041, which provides for the early setting of a parole date, but permits the Board to set a term of imprisonment that accounts for the State's

15

interest in punishment. Hence, the Board cannot defer a parole grant
on the basis that the prisoner has not yet served enough time as
punishment for his offense — as *Dannenberg* emphasized, it may
defer the establishment of a term of imprisonment only if the setting
of a parole date would threaten public safety. (*In re Dannenberg*,
*supra*, 34 Cal.4th at pp. 1083-1084.) The Board's repeated refusal to
follow the statute and regulations governing parole arbitrarily
deprived Cronk of a meaningful opportunity for parole.

The Board's second reason for denying parole based on the
offense, that the motive was inexplicable or very trivial in relationship
to the offense, is equally indefensible. To begin with, as stated in
*Scott I*, *supra*, 119 Cal.App.4th at p. 892, "[t]he Board did not indicate
whether it found Scott's motive 'inexplicable' or 'very trivial ...,' as it
could not be both." As explained in *Scott*:

> An "inexplicable" motive, as we understand it, is
> one that is unexplained or unintelligible, as where
> the commitment offense does not appear to be
> related to the conduct of the victim and has no other
> discernible purpose. A purpose whose motive for a
> criminal act cannot be explained or is unintelligible,
> is therefore unusually unpredictable and dangerous.

(*Id*. at p. 893.)

Here, very clearly, Cronk's motive for the murder was not
inexplicable — it was to save his life after Allen spun around and
fired six shots at him, seriously wounding him twice. If not for the
underlying robbery and burglary, Cronk's action would have been a
valid self-defense, a motive so basic that it justifies homicide where
the individual is not at fault. Moreover, Cronk's motivation for the

16

robbery was not "materially less significant (or more 'trivial') than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk to danger to society if the prisoner is ordinarily presented." (*In re Scott*, *supra*, 119 Cal.App.4th at p. 893.) That the homicide occurred in the course of a robbery is what elevated this crime to murder; Cronk's motive to rob does not elevate his murder to one "especially heinous, atrocious, or cruel." (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1).)

Moreover, the only reasonable finding that the Board could make is that Cronk's motivation favored a finding of parole suitability, for the record indisputably shows that he "committed his crimes as the result of significant stress in his life," a factor in the Board's governing criteria indicating the unlikelihood of reoffense, "especially if the stress has built over a long period of time." (Cal. Code Reg., tit. 15, § 2402, subd. (d)(4).) As in *Scott*, *supra*, 119 Cal.App.4th at p. 890, the evidence as indicated in his psychological reports "suggest[s] the very opposite" of unsuitability for parole. Cronk was struggling with his out-of-control drug addiction and the desperate financial circumstances it caused, which led him to commit the robbery.

"[The Board] is required to consider whether the prisoner committed the crime as a result of significant stress in his or her life." (*In re Rosenkrantz*, *supra*, 29 Cal.4th at p. 679.) The Board completely ignored the evidence that Cronk committed his crime while he was experiencing an unusual amount of stress arising from circumstances not likely to recur. This oversight distorted Cronk's

17

overall suitability profile and deprived him of the individualized
consideration required by due process. (See, e.g., *In re Scott, supra*,
119 Cal.App.4th at p. 898.)

The other static factor the Board relied on to deny parole is
Cronk's criminal history. The design of California's parole law is to
recognize change and rehabilitation when it is presented and to grant a
parole date on that basis. Moreover, Cronk's criminal history is
minimal, with the only violence closely related in time to the
commitment offense and a product of the same factors then playing
upon him and no longer present. (See, e.g., *Scott II*, 133 Cal.App.4th
at p. 602 ["It is difficult to think the phrase 'significant history of
violent crime' (and also the regulatory reference to 'Previous Record
of Violence' [citation] encompasses events as temporally and
situationally related to the commitment offense as those with which
we are here concerned."].)

The opposition by the victim's family and law enforcement was
considered in compliance with the statute. (See Pen. Code, §§ 3042,
3043.) While the Board must consider these statements, that
opposition is based on the unchanging factors of the offense and, for
the same reasons as the offense itself, does not constitute evidence
that Cronk is currently dangerous to public safety. (See *Rosenkrantz
v. Marshall, supra*, 444 F.Supp.2d at p. 1080, fn. 14 [District Attorney
opposed parole based upon view of offense, so opposition "merely
cumulative of the BPT's own determination regarding the callousness
of the crime"]; *Hawks v. Hamlet* (N.D. Cal. 2006) 2006 WL 3147693
* 15, fn. 5 ["To the extent the victims' next of kin and the District

18

Attorney's opposition is based solely on the nature of [] offense,
which will never change, the Board's continuing reliance on that
opposition to deny [] parole may pose the same problems continued
reliance on the nature of the offense does, and that factor will cease to
lack any predictive value with respect to [] future criminality").)
Moreover, where there was no evidence to support the Board's other
reasons to deny the petitioner parole, "the opposition cannot aid
weight when there is no evidence of unsuitability to place in the
balance." (*In re Weider, supra,* 145 Cal.App.4th at p. 590.)

    C.    <u>The Board Has Abused Its Authority By Turning</u>
           <u>The Exception Of Parole Deferral For An</u>
           <u>Indeterminate Life Prisoner Into The Rule Based</u>
           <u>On Arbitrary And Capricious Findings.</u>

    The repeated refusals to grant Cronk parole also arbitrarily
disregarded Penal Code section 3041. Penal Code "[s]ection 3041
addresses how the Board is to make parole decisions for indeterminate
life inmates." (*In re Dannenberg, supra,* 34 Cal.4th at p. 1078.) Its
subdivision (a) provides that "the Board ... shall normally set a parole
date" at a lifer's first parole consideration hearing. Its subsection (b)
provides that "the panel or board shall set a release date unless it
determines that the gravity of the current convicted offense or
offenses, or the timing and gravity of current or past convicted offense
or offenses, is such that consideration of the public safety requires a
more lengthy period of incarceration for this individual, and that a
parole date, therefore, cannot be fixed at this meeting." Under the
regulations adopted by the Board pursuant to this section, the Board
must set a release date unless the evidence establishes a reasonable

basis for concluding that the inmate presently poses an "unreasonable risk of danger to society if released from prison." (See Cal. Code Regs., tit. 15, § 2402, subd. (a).) This Court examined this law in *In re Rosenkrantz, supra*, 29 Cal.4th 616. It found that "[i]n sum, ... parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." (*Id.* at p. 654.) It emphasized: "The Board's authority to make an exception to the requirement of setting a parole date ... should not operate so as to swallow the rule that parole is 'normally' to be granted." (*Ibid.*, quoting *In re Ramirez, supra*, 94 Cal.App.4th at p. 570 [brackets in quote deleted].)

In reality, the Board rarely grants a life prisoner a parole date at the initial hearing. Typically, a lifer granted a parole date will have undergone numerous hearings to that point. These are the lucky few inmates, for almost all lifers are being denied parole regardless of how much time they have already served. The fact is that life prisoners who have served a term of confinement well beyond any uniform term contemplated by the Legislature and who would not pose an unreasonable risk on parole are dying in custody. The Board over the years has become notorious for its denial of parole to the vast majority of eligible murderers, granting parole dates to 1% or less of them. (See, e. g., *In re Rosenkrantz, supra*, 29 Cal.4th at p. 685 [Board granted parole to murderers 1% of time in its last 4800 hearings].) The Board's refusal to grant Cronk parole is part of its systemic disregard of the mandate of section 3041 to normally grant a life

prisoner a parole date when that prisoner appears before it, and to make determinations of unreasonable danger against the legislative norm that most prisoners be deemed suitable for release.

    D.    <u>The Board's Practice Of Making Parole Denials The Norm And Grants The Rare Exception Is A Product Of Its Institutional Bias That Deprives Cronk Of His Constitutional Due Process Rights.</u>

As explicated by the *Dannenberg* minority, parole authorities have a natural tendency to bend to the current political climate that fosters and reflects the public attitude of "lock 'em up and throw away the keys" at the expense of lawful performance of their duties:

> The Board's reluctance to grant parole is understandable, but troubling. Denial of parole may incur the wrath of the prisoner and his immediate supporters. But granting parole to a prisoner who reoffends will incur the disapproval of society at large. [Citation.] The Board's commissioners therefore have little to gain and potentially much to lose by granting parole, and accordingly, the incentive to give only pro forma consideration to the parole decision is strong.

(*In re Dannenberg, supra*, 34 Cal.4th at pp. 1104-1105 (dis. opn. of Moreno, J.).) The Board's policy of rare parole reflective of the current political climate, however, contravenes the legislative design for parole and exemplifies the Board's bias:

> Because of the [political] nature of the parole process, there is more than a little risk that the Board's power to deny parole will at times be exercised in an arbitrary and capricious manner. Failure to grant parole where parole is due wastes human lives, not to mention considerable tax

21

> dollars, concerns that, along with public safety,
> unquestionably motivated the Legislature when it
> enacted section 3041.

(*Id.* at p. 1109.)

Under these circumstances, the courts play a special role, for the executive's replacement of the legal standards for parole with its own personal and political ones goes to the core of our constitutional democracy. "When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power." (*Yick Wo v. Hopkins* (1866) 118 U.S. 356, 369 [6 S.Ct. 1064, 30 L.Ed. 200].) Cronk is "entitled to have his release date considered by a Board that [is] free from bias or prejudice." (*Martin v. Marshall, supra,* 431 F.Supp.2d at p. 1049, quoting *O'Bremski v. Maas* (9th Cir. 1990) 915 F.2d 418 422. This Court should grant review to examine whether the undisputed practice of the parole authorities in rarely granting parole to Cronk and other lifers violates their constitutional right to be heard by an impartial decision-maker.

> E.    This Court Should Grant Review To Determine
> Whether the State's Refusal to Parole Cronk
> Constitutes Cruel and Unusual Punishment Under
> the State and Federal Constitutions.

In *In re Dannenberg, supra,* 34 Cal.4th at p. 1098, this Court invited "indeterminate life prisoners who have been denied parole dates, and who believe, because of the particular circumstances of their crimes, that their confinements have become constitutionally

excessive as a result, [to] bring their claims directly to court by petitions for habeas corpus." Cronk here does so based on his claim that the repeated refusals to grant him parole based on the immutable circumstances of his crime and prior criminality have effectively converted his sentence of life with the probability of parole into one without the possibility of parole, a punishment that is disproportionate to his crime of first-degree murder.  Because the heart of Cronk's petition to this Court is that this Court should grant review to address the serious due process questions raised in it, Cronk here simply cites the authorities that support this claim for relief: *People v. Dillon* (1983) 34 Cal.3d 441; *Solem v. Helm* (1983) 463 U.S. 277; *Ewing v. California* (2003) 538 U.S. 11.)

\* \* \* \* \* \*

## CONCLUSION

For the reasons stated, the Court should grant review.

Dated:  February 16, 2007

Respectfully submitted,

MICHAEL SATRIS

Attorney for Petitioner

Court of Appeal No. C053979
Sacramento County Superior Court No. 06F06029
*In re Donald Everett Cronk on Habeas Corpus*

## <u>CERTIFICATE OF APPELLATE COUNSEL</u>

Pursuant to rule 8.504 (d)(1) of the California Rules of Court

I, Michael Satris, counsel for Petitioner Donald Cronk, hereby certify, pursuant to rule 8.504 (d)(1) of the California Rules of Court, that I prepared the foregoing petition for review on behalf of my client, and that the word count for this petition, including footnotes, is 5591 words. This petition therefore complies with the rule, which limits a petition for review to 8400 words. I certify that I prepared this document in Microsoft Word 2000, and that this is the word count Microsoft Word generated for this document.

Dated:  February 16, 2007

_____
MICHAEL SATRIS
Attorney for Petitioner Donald Cronk

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

# FILED

FEB - 8 2007

COURT OF APPEAL - THIRD DISTRICT
DEENA C. FAWCETT
BY_____ Deputy

In re DONALD EVERETT CRONK on Habeas Corpus.

C053979
Sacramento County
No.   06F06029

BY THE COURT:

    The petition for writ of habeas corpus is denied.

Dated: February 8, 2007

                                        BLEASE, Acting P.J.

                    -------------------------------

cc: See Mailing List

Court of Appeal No. C053979
Sacramento County Superior Court No. 06F06029
*In re Donald Everett Cronk on Habeas Corpus*

## PROOF OF SERVICE BY MAIL

I am a citizen of the United States and a resident of Marin County. I am over the age of eighteen years and not a party to the within above entitled action. My business address is P.O. Box 337, Bolinas CA.

On February 16, 2007, I served the within **PETITION FOR REVIEW** on the interested parties in said action causing to be placed a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in a United States Post Office box addressed to the parties as follows:

Krista L. Pollard
Deputy Attorney General
1300 "I" Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Counsel for Respondent

Mr. Donald E. Cronk
San Quentin State Prison
P.O. Box C-87286
San Quentin, CA 94974
Petitioner

Clerk, Superior Court
County of Sacramento
720 Ninth Street
Sacramento, CA 95814-1398

Clerk, Court of Appeal
Third Appellate District
900 "N" Street, Suite 400
Sacramento, CA 95814

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 16, 2007.

_____
Sabine Jordan