Donald E. Cronk
C-87286  3-N-71U
San Quentin State Prison
San Quentin, CA 94964

Pro Se Litigant

**FILED**

JUL 3 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Case No. C 07-05313 TEH

Donald E. Cronk
            Petitioner

v.

Robert Ayers, Jr., Warden
            Respondent

TRAVERSE TO RESPONDENTS'
**RETURN TO ORDER TO SHOW
CAUSE RE PETITION FOR WRIT
OF HABEAS CORPUS; MEMORANDUM
OF POINTS AND AUTHORITIES**

Petitioner, Donald E. Cronk, respectfully submits the following traverse
to the Respondent's Return in the above entitled case. In support thereof,
Mr. Cronk admits, denies, and alleges as follows:

## INTRODUCTION

Donald E. Cronk, (Petitioner), is a California State prisoner proceeding
pro se in this habeas corpus matter in which he challenges the Board of Parole
Hearings (Board) decision on September 14, 2005, denying him parole.
Petitioner's due process claims have been violated because the Board's
decision was not supported by "some evidence" in the record. The State
Court's decisions to deny Petitioner parole was an unreasonable determination
of the facts.

This case squarely presents the issue of when does the evidence of
rehabilitation become so overwhelmingly clear that the facts of a murder
cannot override the statutory mandate that a parole date shall normally be
granted? The bare fact remains that the dramatic accomplishments of
Petitioner Donald Everett Cronk, are unparalleled in prison, are being
deliberately ignored in order to justify a number of parole denials to a

1

## TOPICAL INDEX

**PAGE**

TOPICAL INDEX...............................................i

INTRODUCTION.................................................1

TRAVERSE TO RESPONDENT'S RETURN .............................2

MEMORANDUM OF POINTS AND AUTHORITIES.........................7

ARGUMENT.....................................................7

REMEDY......................................................17

CONCLUSION..................................................19

PRAYER......................................................20

clearly suitable inmate.

He has served over 25 years, and now, with thirty-four (34) years of credits, Petitioner has exceeded every one of the 48 available terms under the 1st degree murder matrix. This makes his sentence disproportionate to his conviction. On five (5) separate occasions the Board has reviewed this matter and based it's denial on factors outside the statutory and regulatory criteria. The remedy in this case is quite simple, petitioner was found suitable for parole by the Board of Parole Hearings on November 14, 2007, and that decision was affirmed by the CDCR Board of Parole Hearings Decision Review panel on March 13, 2007.

On April 11, 2008, Governor Arnold Schwarznegger reversed petitioner's parole grant. Thus, an indisputably parole suitable inmate is being subjected to unfounded denials of parole in the face of exclusively favorable evidence, with unsubstantiated findings being used to justify this pattern.

## TRAVERSE TO RESPONDENT'S RETURN

### I.

Petitioner admits the portions of the allegations of paragraph 1 regarding the validity of his underlying conviction and the initially imposed sentence, and acknowledges that he is in the actual custody of the California Department of Corrections and Rehabilitation (CDCR). However, Petitioner denies generally and specifically that he is currently "lawfully" or properly in the custody of the CDCR, for the reasons alleged in the petition and herein. Petitioner is in fact challenging his sentence to the extent that the Board has failed to fulfill its duty to set his term. Thus, it is the execution of the sentence, rather than the initial imposition, that is at issue herein.

### II.

Petitioner admits the portions of the allegations in paragraph 2 that he filed a petition for writ of habeas corpus in Sacramento County Superior Court on August 28, 2006, challenging his Board of Parole Hearings' 2005 decision denying him parole and that petition was denied. Petitioner admits that the

Board was biased, that he was entitled to immediate release based on the
Board's regulatory matrices, and that the Board abused its discretion.
However, petitioner denies that there were any facts to support the denial of
parole.

### III.

Petitioner admits the allegations in paragraph 3 that the said petitions
to the California Court of Appeal and California Supreme Court were filed and
summarily denied.

### IV.

Petitioner admits portions of the allegations in paragraph 4 regarding
the fact that he has exhausted his State Court remedies regarding his claims.
Petitioner generally and specifically denies that his claim is being
interpreted too broadly, and denies the remainder of the allegations in
paragraph 4.

### V.

Petitioner admits the allegations in paragraph 5, that the petition is
timely and not subject to any other procedural bar.

### VI.

Petitioner generally and specifically denies each and every allegation
of paragraph 6. Petitioner is in fact entitled to relief.

### VII.

Petitioner generally and specifically denies each and every allegation
of paragraph 7. Petitioner affirmatively alleges that he is entitled by law
to be given a parole date, is to be presumed suitable for parole under the
doctrine of McQuillion I, supra, and the Board is required to set a parole
date at the initial hearing absent the presence of the statutory exception set
out in Pen. Code §3041 (b). McQuillion I specifically ruled that, as a matter
of federal due process, under clearly established U.S. Supreme Court
authority, the language of 3041 creates a presumption of parole suitability.

3

Petitioner's right to parole is established by these authorities, and said right was violated when the Board repeatedly refused to grant him parole, doing so without sufficient evidence to support that decision.

## VIII.

Petitioner generally and specificallly denies each and every allegation of paragraph 8. Respondent's position has already been addressed and the law is clear — due process requires judicial review of the record before the Board to determine if "some evidence" in the record supports the Board's decision to deny parole.

## XIV.

Petitioner denies the allegation of paragraph 9. This standard comes from the Supreme Court's decision in <u>Superintendent v. Hill</u>, 472 U.S. 445, 457 (1985). See also <u>Jancsek v. Oregon Bd. Of Parole</u>, 833 F.2d 1389 (9th Cir 1987) [adopting the "some evidence" standard].

## X.

Petitioner generally and specifically denies the allegations of paragraph 10. As is discussed in the attached memorandum of points and authorities, clearly established U.S. Supreme Court law creates a due process right to parole. <u>Greenholtz v. Inmates of Nebraska Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979); <u>Board of Pardons v. Allen,</u> 482 U.S. 369, 376-78 (1987); and <u>McQuillion v. Duncan [McQuillion I]</u>, 306 F. 3d 896, 900 (2000). His achievements meet or exceed every requirement for parole suitability, yet the Board failed to view them as factors favoring the application for parole.

## XI.

Petitioner generally and specifically denies the allegations of paragraph 11. A simple test can be done in connection with an evidentiary hearing to

4

illustrate the vagueness of the regulations as they are currently being applied, as the Santa Clara County Court has previously done, proving this claim.

## XII.

Petitioner generally and specifically denies the allegations of paragraph 12. Here, Petitioner's Due Process rights exist by virtue of clearly established United States Supreme Court authority, which a state court cannot destroy.

## XIII.

Petitioner denies paragraph 13 allegation that an evidentiary hearing is not necessary. An evidentiary hearing is needed to substantiate this claim.

## XIV.

Petitioner generally and specifically denies the allegations of paragraph 14. Petitioner affirmatively alleges that he is entitled by law to be given a parole date, is to be presumed suitable for parole under the doctrine of McQuillion I, supra, and the Board is required to set a parole date at the initial hearing absent the presence of the statutory exception set out in Pen. Code §3041 (b). Nor can respondents dispute the proper application of the Matrix to this case. Accordingly, his term has become disproportionate to his culpability. The remedy for a due process violation may be release from custody. This is not simply a procedural issue where another hearing can be held at which a technical correction can occur. Instead, Petitioner's substantive due process rights were denied by a finding that was not supported by any evidence in the record.

## XV.

Petitioner generally and specifically denies the allegations of paragraph

5

15 claim, that petitioner failed to state or establish any grounds for habeas corpus relief. Petitioner is not seeking "early release" on parole, but merely seeking to compel the Board to perform its statutory duty to fix his term. He has been given a sentence that was not complete at the time that it was initially issued by the trial judge, since under California law the sentencing process is not complete on an indeterminate sentence until the Board fixes the term. In re Roberts, 36 Cal. 4th 575, at 589-590 (2005) [parole is an integral part of the overall process of sentencing and that process is not complete until the term is set and the inmate released]; see also In re Sena, 94 Cal.App 4th 836, at 839 (2003).

## XVI.

Except as expressly admitted in this Traverse, Petitioner denies the allegations of Respondent's Answer to Petition for Writ of Habeas Corpus. Petitioner affirmatively alleges and incorporates herein by reference each and every allegation and all of his claims as presented in his petition. Respondent has not established a lawful basis for the denial of parole, or offered any real explanation as to how or why the evidence supports a finding the Petitioner would currently pose an unreasonable risk to the public if released.

## MEMORANDUM OF POINTS AND AUTHORITIES

ARGUMENT

1.

### PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE; THE STATE COURT DECISIONS WERE CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND HE IS ENTITLED TO RELIEF UNDER AEDPA.

As will be seen, Petitioner's claim for federal habeas corpus relief is premised upon both prongs of the standards under the Antiterrorism and Effective Death Penalty Act (herein after, referred to as "AEDPA"), 28 U.S.C. §2254(d)(1&2). California's statutory scheme creates a presumptive liberty interest in parole. In <u>McQuillion v. Duncan</u> (9th Cir. 2002) 306 F.3d 895, 901, the United States Court of Appeal for the Ninth Circuit stated:

> "Under the 'clearly established' framework of Greenholtz and Allen, we hold that California's parole scheme gives rise to a cognizable liberty interest in release on parole. The scheme 'creates a presumption that parole release will be granted' unless the statutorily defined determinations are made." Allen, 482 U.S. at 378 (quoting Greenholtz, 442 U.S. at 12).

The statutory presumption of parole suitability is set forth in Penal Code § 3041 (a). The statutorily defined determinations that must be met to overcome the presumption that parole release will be granted are set forth in Penal Code § 3041 (b). See <u>In re Ramirez,</u> 94 Cal. App.4th 549.

The language in Penal Code § 3041 (a) providing that the Board "shall normally" set a parole release date creates a presumption affecting the burden of proof, since the statute is in furtherance of an expressly stated public policy to ensure uniformity in sentencing. California Evidence Code § 604 provides as follows: "A presumption affecting the burden of proof is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied...."

Respondent acknowledges that this Court may grant Petitioner relief
if it finds that the state court's adjudication on the merits "(1) resulted
in a decision that was contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the Supreme Court of
the United States; (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence presented
in the state court proceedings."  28 U.S.C. §2254(d).

Rather than relying on the established Supreme Court decisional law
in this area, this is where respondent's position breaks down.  Respondent
takes the fallacious position that due process is satisfied when the state
provides an inmate an opportunity to be heard and a statement of the reasons
for the parole decision.

When in fact, due process requires judicial review of the record before
the Board to determine if "Some evidence" in the record supports the Board's
decision to deny parole Superintendent v. Hill, 472 U.S. 445 457 (1985),
the Ninth Circuit court has repeatedly cited Sass v. Board of Prison Terms,
461 F.3d at 1128-1130, Irons II, McQuillion, supra, and Hayward v. Marshall,
312 F.3d 536 at 542-544; See also Jancsek v. Oregon Bd. Of Parole, 833 F.2d
1389 (9th Cir 1987).

On pages 5-7 of Respondent's answer Argument I.-A.  Respondent attempts
to sidestep Ninth Circuit precedent by claiming that because there is no
Supreme Court holding involving the exact same fact pattern parole hearings
that required judicial review using the "some evidence" standard, the AEDPA
does not allow the District Court to follow Hill, citing Carey v. Musladin,
_U.S._, 127 S. Ct. 649 (2006).  The Supreme Court cases cited by the
petitioner in Carey v. Musladin dealt with the potentially prejudicial conduct
of the state, a situation far different in a constitutional context than
the scenario presented to the Court, where the conduct was by a civilian
spectator, not a state actor.  The Supreme Court recently explained the role
of federal review of state court decisions and the impact of the AEDPA in
Panetti v. Quarterman, _U.S._ 127 S. Ct. 2842 (2007).

In Panetti, the Supreme Court explained, AEDPA does not 'require state
and federal courts to wait for some nearly identical fact pattern before
a legal rule must be applied.' Carey v. Musladin, 549 U.S---,---, 127 S.Ct.
649, 656 (2006) (slip op., at 2) (Kennedy, J., concurring in judgment.)
Nor does AEDPA prohibit a federal court from finding an application of a
principle unreasonable when it involves a set of facts different from those

8

of the case in which the principle was announced. [citation omitted]
The statute recognizes that, to the contrary even a general standard may
be applied in an unreasonable manner. Panetti v. Quarterman, U.S. 127 S.
Ct. 2842 2858. In Panetti, the majority was adopting the reasoning used by
Justice Kennedy in his concurring opinion in Carey v. Musladin. Here, the
"general standard" announced by the Supreme Court in Superintendent v. Hill,
that some evidence must support a deprivation of a liberty interest, was
unreasonably applied by the State Courts when they failed to find that the
Board had no evidence before it to support the denial of parole. In the
petitioner's case considering the evidence of rehabilitation, coupled with
the twenty-five year old crime and even older un-adjudicated non-violent
property crime priors, the evidence failed to satisfy the test articulated
by the Circuit Court in Hayward v. Marshall, 512 F.3d 536, at 542-544 (2008).
Unlike Musladin, supra, and the cases cited therein, the present case does
not pose a completely different scenario than what the Supreme Court faced
in Hill.

The issue with Superintendent v. Hill, involved prison disciplinary
hearings and the present case concerns prison parole hearings, both of which
are conducted by the state and both "directly affect the duration of the
prison term." Sass v. Board of Prison Terms, 461 F.3d at 1128, citing Jancsek
v. Oregon Bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir 1987). See Hayward,
supra, Irons II, Supra,; McQuillion I, supra.

Respondent goes on in footnotes on page 6, to infer that Sandin abrogated
Greenholtz's methodology for establishing the liberty interest. When in
fact, the Ninth Circuit Court specifically found that the language in Sandin
v. Conner, 515 U.S. 472 (1995), did not hold that the reasoning in Board
of Pardons v. Allen, 482 U.S. 369-377-78 (1987) was inapplicable to the parole
system, and thus had no effect on the law governing parole. McQuillion v.
Duncan [McQuillion I] 306 F.3d 895, 902, (9th Cir. 2002); see also, Michael
v. Ghee, 498 F.3rd 372, 378 (6th Cir. 2007) [noting that Sandin was decided
only in the context of prison conditions, not parole eligibility, declined
to apply its reasoning in a parole context]; Ellis v. District of Columbia,
84 F.3d 1413, 1418 (D.C. Cir. 1996) [declining to follow Sandin's reasoning
because, Greenholtz and Allen were directly on point as they both dealt with
a prisoner's liberty interest in parole-Sandin did not].

9

## II.

### THE STATE COURTS UNREASONABLY APPLIED CLEARLY ESTABLISHED FEDERAL LAW VIOLATING PETITIONER'S DUE PROCESS RIGHTS; THAT REQUIRE APPLYING THE SOME EVIDENCE STANDARD TO PAROLE HEARINGS.

In the response on page 7, section B. lines 27 & 28 "Respondent recognizes that the Ninth Circuit applies the some evidence standard as clearly established federal law,"... Respondent than goes on to say that petitioner is asking this court to re-examine the facts of his case and re-weigh the evidence; and that there is no Supreme Court law permitting that degree of judicial intrusion.

Petitioner is respectfully requesting this court to rely on established case law and regulations. The current case law is clear that there must be "some evidence" which establishes a nexus between the Board's findings and current dangerousness. As the Ninth Circuit explained in Hayward Supra, in order to make a determination of the reasonableness of a reviewing court's decision, pursuant to AEDPA, the first step in the analysis is a review of state law. Hayward Supra, 2008 WL 43716, at *5. This standard comes from the Supreme Court's decision in Superintendent v. Hill, 472 U.S. 445 457 (1985), wherein the Court ruled that due process requires judicial review of the sufficiency of the evidence when a liberty interest is invoked, and in that context, applied the "some evidence" standard. As noted in Irons II, Supra, the Supreme Court had "clearly established that the parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by "some evidence in the record." Id. at 850-851, citing Hill, 472 U.S. at 457; Sass, 461 F. 3d, at 1128-1130; Biggs v. Terhune, 334 F 3d, 910, 915 (9th Cir 2003) and McQuillion I, 306 F.3d at 904. Finally, in Hayward, 512 F.3d at 542-544.

In the case of In Re Roderick, 154 Cal.App.4th 242, 264 (2007), the court specifically discounted Appellant's position stating that "the courts would indeed be relegated to the status of potted plants" if the standard of review required "judicial affirmance of every Board decision if even a single unsuitability factor is found, regardless of whether that factor would rationally support a conclusion, based on individualized consideration, that the inmate would pose an unreasonable risk of danger." Id., citing, In re Scott [Scott I], 119 Cal.App.4th 871, 898 (2004).

As stated above, both state and federal decisions have embraced this rule, specifically the following state cases: In re Singler, __Cal.App__2008 WL 788471 (2008); In re Burdan, __Cal.App.__ 2008 Wl 757033 (2008); In re Barker, 151 Cal.App,4th, 346,265 (2007), In re Lee, 143 Cal.App.4th 1400, 1408-1409 (2006) [req. for depubl. denied at S149411], In re Elkins, 144 Cal.App.4th 475, at 499, 521 (2006) [pet'n for rev. & req. for depubl. denied at S148058; applic. for stay of inmate's release denied, at S147840], In re Weider, 145 Cal.App.4th 570, at 589-590 (2006), In re Scott, [Scott II], 133 Cal.App.4th 573, at 594-595 (2005) [request for stay of inmate's release & request for depublication denied by Cal. Supr. Ct. at #S138430], and In re Gray (2007) 151 Cal.App.4th 379,383 [depubl. request denied at S153831].

Sanchez v. Kane, 444 F.Supp.2d 1049 (C.D. Cal.2006), Rosenkrantz v. Marshall [hereinafter Rosenkrantz VI], 444 F.Supp.2d 1063, 1085 (C.D. Cal. 2006), Thomas v. Brown, 513 F.Supp. 1124, 1128-1129 (N.D. Cal. 2006), Brown v. Kane __F.Supp.2nd __[2007 WL 1288448] slip opn., P. 6 (N.D. Cal. 2007), Blankenship 2007 WL 1113798, and Martin v. Marshall (N.D. Cal.2006) 4431 F.Supp.2d 1038.

Therefore, federal case law is now crystal clear that when an inmate challenges the Board's decision to deny parole, the reviewing court **must** determine if there is any evidence that could support the Board or Governor's conclusion that the inmate currently presents an unreasonable risk of danger if released. (emphasis added)

First degree murder is the commitment offense that drew the indeterminate life term in this case, and whose gravity has to be "especially heinous, atrocious or cruel" to merit parole denial (2402, subd. (c)(1), or (B) "The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder." These regulatory factors do not apply to petitioner. The Board Commissioner on page 3 of the decision, lines 19-21 stated; "I just decided that this was too heinous, I mean too serious of an offense..." Merely making a vague generalization of the crime's gravity and aggravation is insufficient to uphold the Board's denial. The Board Commissioner on page 2 of the decision, lines 19- 23 stated; "And he's being denied because the offense was carried out in a dispassionate and calculated

11

manner. The motive for the crime was inexplicable or very trivial in
relationship to the offense."

"The other reason for the denial is his escalating pattern of criminal conduct
or violence." The petitioner's case wasn't an execution-style murder and
all the evidence suggests it was planned as a robbery only.

Here, petitioner shot the victim once after being repeatedly shot by
the victim during a robbery, this does not necessarily show an "especially
heinous, atrocious, or cruel brutal murder." Whereas, in the Elkins denial,
the Board and governor cited five (5) factors aggravating the base term,
all these factors were considered by the reviewing courts and the denial
was later reversed. In re Elkins, (2006) 144 Cal.App. 4th 475, at 499, 521.
The robbery may in this case be characterized as calculated, but the focus
must be on the life-term murder. Here, very clearly, petitioner's motive
for the murder was not inexplicable it was to save his life after the victim
spun around and fired several shots at him. If not for the underlying robbery
and burglary, petitioner's action would have been a valid self-defense, a
motive so basic that it justifies homicide where the individual is not at
fault. Moreover, petitioner's motivation for the robbery was not "materially
less significant (or more trivial)" than those which conventionally drive
people to commit the offense in question, and therefore more indicative of
a risk of danger to society if petitioner is released. If there was malice
it arose spontaneously after the petitioner was being repeatedly shot by
the victim. It is irrational to reason the murder, as opposed to the robbery,
was carried out in a calculated manner.

Barring a defense of necessity, which is rarely a cognizable defense
for any crime, greed is generally the robber's typical motive. That the
homicide occurred in the course of robbery is what elevated this crime to
murder; petitioner's motive to rob does not elevate his murder to one
"especially heinous, atrocious, or cruel."

Nevertheless, even entertaining the Board's premise that the gravity
of the commitment offense is sufficient to sustain his denial; several courts
have concluded that similar Board denials or governor's reversals were a
due process violation. "Thus, denial of release based solely on the basis
of the gravity of the commitment offense warrants especially close scrutiny."

12

(Scott II, supra, 133, Cal.App.4th at pp. 594-595.

Relying on In re Biggs, (In re Irons, 358 F.Supp.2d at 947, n. 2,) and
Scott II, the Rosenkrantz VI, court made two points.
"First, continued reliance upon the unchanging facts of petitioner's crime
makes a sham of California's parole system and amounts to an arbitrary denial
of petitioner's liberty interest." (Id. at 1082.)  Following the Irons
doctrine, Rosenkrantz held that the Board's choice to ignore two decades
of positive programming in favor of immutable facts was an arbitrary and
capricious method of converting a minimum term into an LWOP sentence.  Second,
the court concluded the predictive values of the crime were so diminished
that it could not serve as "some evidence" to support the Board's finding
of parole unsuitability.  In Elkins supra, ultimately, the court concluded
"[g]iven the lapse of 26 years and the exemplary rehabilitative gains made
by Elkins over that time, continued reliance on these aggravating facts of
the crime no longer amount to 'some evidence' supporting denial of parole."
(Id.)  In delivering it's decision, the court discussed extensively
Rosenkrantz VI, supra, Martin, supra, and Irons, supra,  focusing on the
fact that continuing reliance on unchanging circumstances to deny parole,
despite years of positive institutional behavior, has no predictive value,
and thus, such reliance is a due process violation".  (Id. at 500-502.)

## III.

### THE STATE COURT DECISION IS CONTRARY TO CLEARLY
### ESTABLISHED SUPREME COURT LAW AS IT RELIES ON
### UNCONSTITUTIONALLY VAGUE LANGUAGE TO SUPPORT
### THE DENIAL OF PAROLE.

The question of vagueness of the regulatory criteria only needs to be
addressed in the event that this court concludes that there is "some evidence"
of petitioner being currently dangerous in the record of the 2005 hearing.
In the respondent's answer on page 9, lines 7-9, "Thus, the court reasonably
concluded that the facts supported the Board's finding that the crime was
committed in an especially heinous and cruel manner, and thus  supported
the Board's decision to deny parole."

13

However, the Board's characterization of the crime to support the denial of parole, and the state's court's subsequent upholding of the Board's decision, relies on wholly vague and amorphous terms. Thus, the decision is contrary to clearly established Supreme Court law and violative of fundamental due process.

A statute (or regulation) is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement." United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989). In addressing a vagueness challenge, the first question is "whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in a particular case." Schwartzmiller v. Gardner, 752 F.2d 1341, 1346 (9th Cir 1984). As will be discussed herein, the factors set forth in Cal. Code Regs., Tit. 15, § 2402(c) used by the Board to determine whether the crime was committed in an "especially heinous, atrocious or cruel" manner as applied, are purely subjective, and are unconstitutionally vague. As such, these factors are not easily understood or explained, and thus, do not give adequate notice to an inmate that they would apply. [1]

The California Supreme Court in two (2) separate opinions discussed the standards the Board may use in finding a prisoner unsuitable for parole based on the circumstances of his commitment offense. See Rosenkrantz V, supra, 29 Cal.4th 616; In re Dannenberg, supra, 34 Cal.4th 1061. In Rosenkrantz V, the court held that "the nature of the prisoner's offense, alone, **can** constitute such as basis for denying parole." at 682. (emphasis added).

---

[1] The California Supreme Court has determined in cases involving death penalty or life without the possibility of parole, the terms "especially heinous, atrocious, or cruel, manifesting exceptional depravity" are unconstitutionally vague and violative of fundamental due process. The Superior Court of Santa Clara v. Engert, 31 Cal.3d 797, 805 (1982).

The Rosenkrantz V decision employed conditional language that the offense can constitute such a basis, if the crime could reasonably be considered **more** aggravated or violent than the minimum necessary to sustain a conviction for that offense.[2]    Id. at 683, (emphasis added).  Although the Rosenkrantz V language is itself unconstitutionally vague, the California Supreme Court, in that decision, did at least state a directive that sole reliance on the commitment offense will violate the prisoner's due process right pursuant to Penal Code §3041 (a) in situations where the offense "could [not] be considered **more** aggravated or violent than the minimum necessary to sustain a conviction for that offense." Id. at 683. (emphasis added)

However, the subsequent Dannenberg decision further confused the issue by changing the standard set forth in Rosenkrantz V, allowing the Board to deny parole based on the commitment offense if the inmate's crime was "more than minimally necessary to convict him of the offense for which he is confined." In re Dannenberg, supra, 34 Cal.4th at 1095.  This fundamentally altered the standard by removing the focus from determining whether the crime was "especially heinous, atrocious, and cruel" so long as there is more evidence than "minimally necessary to convict."[2]

The result is a definition, or standard, that like the Greek god Proteus, constantly changes shapes, is never consistent and is incapable of being defined or pinned down.  What may be callous or heinous under this standard to one Board member may not be such to another.  As presented in the Cal. Code Regs., tit. 15 §2402, and subsequently defined by both Rosenkrantz V and Dannenberg, every murder could fit into the category of "more than minimally necessary to convict" by virtue of the fact that the inmate was convicted, and thus the evidence is presumptively greater than the "minimum necessary to convict."  This application is wholly arbitrary and depends on the subjective, personal opinions and whims of the Board members or Governor.  The current structure permits a conclusion that can easily be reached by simply claiming that the facts of any murder are more than minimally necessary for conviction.

---

2  As the dissent in Dannenberg pointed out, this standard is completely unreviewable.  Dannenberg, supra, 34 Cal.4th at 1102.

Since the Dannenberg Court dispensed with the requirement that the offense be compared to other murders, the standard can now fit any murder, from nonintentional killings to DUI based murders, to accomplice liability and the like.

As explained by the United States Supreme Court, there is nothing in the language and descriptions used that standing alone "implies any inherent restraint on the arbitrary and capricious infliction" of the denial of parole suitability. Godfrey v. State of Georgia, 446 U.S. 420, 428 (1980). The Court explained that a "person of ordinary sensibility could fairly characterize almost every murder as [exceptionally heinous, atrocious, cruel or callous]." Id. at 429. The Court has determined that for death penalty purposes, the terms "especially heinous, atrocious or cruel" are unconstitutionally vague. Maynard v. Cartwright, 486 U.S. 356, 361-364. The Court has repeatedly found that as applied to death penalty cases, the terms such as "heinous" and "atrocious" could be used by any reasonable person to characterize every murder so as to fall into those categories. Shell v. Mississippi, 498 U.S. 1, 3 (1990); Maynard v. Cartwright, 486 U.S. 363; Godfrey v. Georgia, supra, 446 U.S. 420, 428-429. [3]

The decision in Dannenberg further confuses the situation by stating that the crime need only be above the minimum necessary for conviction. Id. 1071. This allows the Executive Branch to utilize any murder as a basis for the denial of parole, rendering the standard unconstitutionally vague.

A simple test can be done in connection with an evidentiary hearing to illustrate the vagueness of the regulations as they are currently being applied, as the Santa Clara County Superior Court has previously done in a group of three consolidated cases. (See the cases of In re Arthur Criscione, Case #71614, In re Jamieson, Case #71194 and In re Viet "Mike" Ngo, Case #127611.) Respondent can be ordered to produce the decisions by the Parole Board during the ninety (90) days before and after Mr. Cronk's hearing, along with the Governor's decisions regarding any case where parole

---

3 The decision in Engert applied to death penalty and LWOP cases. However, this creates a loop-hole in which if not corrected, the Board and courts would be allowed to apply constitutionally vague terms to term-to-life sentences, in order to effectively turn the sentence into an LWOP by repeatedly using the crime to deny parole.

16

was granted by the Board (or en banc decision or rulings by the Decision Review Unit as to any case that was subsequently reversed or modified), and as to any inmate that was released, any prior decisions of the Board denying parole to that inmate. At this point, respondent has never produced any example in the last five years of a murder case where parole was granted at the initial hearing and was upheld by Decision Review and the Governor, and the inmate released.

Thus, Petitioner anticipates that this evidence would show that in 100% of all murder cases, the crime has been found to be "especially heinous, atrocious, or cruel" at some point. Thus, as applied the phrase would be violative of federal due process in that it can fit any crime, and has lost the ability to distinguish crimes that truly are particularly egregious.

## IV.

## REMEDY

The remedy in this case is quite simple and appropriate as **petitioner was found suitable for parole by the Board** of Parole Hearings on November **14, 2007,** and that decision was affirmed by the CDCR Board of Parole Hearings Decision Review panel on March 13, 2007 (Exhibit A).

On April 11, 2008, Governor Arnold Schwarznegger **reversed** petitioner's parole grant utilizing the same language as the BPH has in all of petitioner's prior parole hearings which is before this very court in the instant case.

The remedy for a due process violation may be release from custody. This is not simply a procedural issue where another hearing can be held at which a technical correction can occur. Instead, Petitioner's substantive due process rights were denied by a finding that was not supported by any evidence in the record.

This is clearly a case where the factors of suitability are just overwhelming, if they are actually considered. Clearly established United States Supreme Court authority requires that when a State adopts certain procedures for a hearing, any person involved in that process is entitled to the benefit of those procedures. (Evitts v. Lucey, (1985) 469 U.S. 387, 393; see also Griffin v. Illinois, 351 U.S. 12, 20 (1956).) Thus, every

17

inmate must be given the benefit of this presumption of suitability.

The Board failed to meaningfully consider any of the suitability factors and failed to provide any real or reliable evidence of unsuitability.  Absent such evidence, the Board must comply with the "rule" of Penal Code §3041 and uphold petitioner's release.

The last issue to be addressed in determining petitioner's release is the fixing of the term proportionate to the circumstances of the case.  The Determinate Sentence Law's dictate of uniform terms for similar crimes applies to petitioner's indeterminate sentence just as it does to determinate terms.

The setting of a term for petitioner presents little problem under the matrix, see BPH calculation sheet (Exhibit B ). The Board found the applicable matrix category as 3B, setting petitioner's base term at 29 years before post conviction custody credits were applied as directed under Cal. Code Regs. Tit. 15 §2410. (Cal. Code Regs., Tit. 15 §2403(c).
The Board granted and applied post-commitment credits of 4 months per year for his then 23 years in CDCR totaling 93 months or 7.75 years. Combined with over 50 months pre-prison credits, petitioner has served an effective term in excess of 34 years, which is beyond the maximum 33 year term prescribed under the Board's own matrix for the very worst first degree murder.  In fact, petitioner's term served exceeds every one of the 48 available terms under the first degree murder matrix.

Upon request of this court or at an evidentiary hearing Petitioner will submit a status report from the time of the filing of this petition, the suitability finding of the BPH, and to date, of the additional acheivements of Petitioner and enhanced evidence of suitability.

## V.

### CONCLUSION

California's Supreme Court has recognized that the due process protections that parole applicants possess "could not exist in any practical sense without a remedy against their abrogation." (Rosenkrantz, 29 Cal.4th at 655.) To date, the California Courts have refused to address the serious state and federal constitutional implications of the Board's denial of parole to Petitioner, as well as to the vast majority of all eligible prisoners. For all of the reasons set forth above, this Court must resolve these issues.

Here, the Board failed to conduct Petitioner's hearing with the presumption that a parole date will be set, absent a finding which must be supported by evidence of current dangerousness and a statement of reasons why after twenty-five years the circumstances of the crime continue to preclude their ability to set a parole date. The presumption of parole suitability has been violated by the Board which used standardized reasons without any underlying evidentiary basis to find Petitioner unsuitable for parole. (See Penal Code Section 3041.5 (b) (2))

In the matter before the Court the Board abused its discretion; abridged Petitioner's basic liberty interest in parole; and violated his federal and state constitutional right to due process and equal protection of the law by failing to conduct his parole hearing in accordance with established law, and further, by failing to set his term uniform to offenses of similar gravity and magnitude.

Dated: 7/29/08

Respectfully Submitted

Donald E. Cronk
Petitioner

19

## PRAYER

Petitioner is without remedy save by writ of habeas corpus.

WHEREFORE, petitioner prays the Court:

1. Grant a release to parole.
2. Order the Board to reinstate suitability finding.
3. Appoint counsel to represent him in this matter; and
4. Conduct an evidentiary hearing if necessary to resolve any disputed factual issues, allow oral argument regarding the issues set forth herein,
5. Grant any other and future relief as justice may require.

Dated: 7/29/08

Respectfully Submitted,

Donald E. Cronk
Petitioner

20

**DECLARATION OF SERVICE BY U.S. MAIL**

Case Name:   In re CRONK v AYERS
             Northern District Court of Appeals
             Case No.  C 07-05313 TEH

I, Russell Trunzo, declare:

I am 18 years of age and older and not a party to this matter.
On July 29, 2008, I served the attached

**TRAVERSE TO RESPONDENTS' RETURN TO ORDER TO SHOW CAUSE
RE PETITION FOR WRIT OF HABEAES CORPUS;
MEMORNADUM OF POINTS AND AUTHORITIES**

in said cause, placing, or causing to be placed, a true copy thereof, enclosed
in a sealed envelope with postage thereon fully prepaid, in the internal
mail collection system at San Quentin State Prison, San Quentin, California,
94964, addressed as follows:

Office of Attorney General          United States District Court
455 Golden Gate Ave.                Northern District of California
San Francisco, CA 94102             U.S. Courthouse
                                    450 Golden Gate Avenue
                                    San Francisco, CA 94102-3483

I declare under penalty of perjury under the laws of the state of California
the foregoing is true and correct; and that this declaration was executed
on July 29, 2008, in Marin County, California.

Russell Trunzo                       Russell Trunzo
Declarant                            Signature

21

## VERIFICATION

I, Donald Cronk, state:

    I am the petitioner in this action.  I have read the
foregoing petition for writ of habeas corpus and the facts stated
therein are true of my own knowledge, except as to matters that
are therein stated on my own information and belief, and as to
those matters I believe them to be true.

    I declare under penalty of perjury that the foregoing is
true and correct and that this declaration was executed at San
Quentin State Prison, Marin County, California on July 29, 2008.

Donald Cronk
Pro Se Litigant

22

# EXHIBIT "A"

ARNOLD SCHWARZENEGGER, GOVERNOR

**BOARD OF PAROLE HEARINGS**
**DECISION PROCESSING AND SCHEDULING UNIT**
P.O. Box 4036
Sacramento, CA 95812-4036



March 25, 2008

Donald Cronk CDC# C-87286
San Quentin State Prison
San Quentin, CA 94964

Dear Mr. Cronk:

Your parole consideration hearing was conducted on November 14, 2007.
Decision Review is completed and the final decision date of your hearing
is March 13, 2008. The decision has been approved by the California
Department of Corrections and Rehabilitation, Board of Parole Hearings.

The decision finding you suitable for parole may be subject to review by
the Governor.

Attached is the last "Decision Page" with the stamped final date and a
front cover sheet to your transcript.   Please incorporate these pages in
your copy of the hearing transcript.

Sincerely,

*Linn Austen*

LINN AUSTEN
Chief, Decision Processing
and Scheduling Unit

Enclosure

cc:Institution Records Office

jm

# EXHIBIT "B"

**BOARD OF PRISON TERMS**                                    **STATE OF CALIFORNIA**
**LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION**
**GRANT PAROLE**

**NOTE TO CDC STAFF: Do not release the inmate until after BPT and Governor's review.**

☑ **PAROLE GRANTED**  *Special Conditions, parole to Marin City*

If this decision is final, you WILL get a parole date. The Board will send you a copy of the decision. If this decision is changed, you will be told why. The Board may set up another hearing if the decision is changed or taken away.

A. Base time in prison................................................................. _348_ Months

_66618_            _2_                _157_
Case #            Count #            Offense

B.  Time for using a weapon................................................ + _____ Months

C.  Time for other crimes.................................................. + _____ Months

_____  _____  _____  _____
Case #            Count #            Offense  Months

_____  _____  _____  _____
Case #            Count #            Offense  Months

_____  _____  _____  _____
Case #            Count #            Offense  Months

D.  Total term............................................................ = _____ Months

E.  Time credit from _6/13/84_ to _11/14/07_  -  _93_ Months
                    (Life term start date)  (Date of hearing)

F. ............................................................................ = _255_ Months

**NOTE:** This is not a final decision.  Do not break any rules in California Code of Regulations, Title 15, Section 2451.  If you break any rules, your release date may be changed or taken away.

| HEARING PANEL | | |
|---|---|---|
| Name | Date | _11 - 14-07_ |
| Name  S. Kerr | Date | |
| Name | Date | |

| NAME | CDC# | PRISON | DATE |
|---|---|---|---|
| Chavez, David | C 57356 | SP | 14 Nov 07 |

**BPT 1005(a)**(REV. 01/02)

Distribution: White -C. File
Canary- BPT
Pink- Prisoner

RECALCULATE OF MEPD FOR 15-LIFE AND 7-LIFE PRISONERS
RECEIVED PRIOR TO 5-27-87
PURSUANT TO IN RE MONIGOLD (1988) 205 CAL. APP. 3d 1224
NO DSL TERM OR DSL TERM COMPLETED

A. CREDITS VESTED PER PC2934 (If offense date prior to 1-1-83)
   1. Total days served prior to waiver date (Waiver date
      - received date + postsentence credit)            = ____ ____
   2. A1 ÷ 2 (round down)                                = ____ ____
   3. Less credits lost per PC2932                       - ____ ____
   4. Credits to be vested                               = ____ ____
=================================================================
B. MAXIMUM ELIGIBLE PAROLE DATE
   1. __6-13-84__  +  __27__                      = __6-13-2011__
      RECEIVED DATE    TOTAL TERM                    BASE DATE
   2. Less total preconfinement credit            - __1613__
   3. Less A4 OR vest 1/2 postsentence credit      - __2__
   4. MAXIMUM ELIGIBLE PAROLE DATE                 = ~~6-11-2011~~ 170-200
=================================================================
C. WORKTIME CREDIT PER PC2933/PC2934
   1. Less MET worktime credit earned from waiver/
      received date through 2-15-89 or end of DSL  - __1584__
      term if later
   2. Current MEPD (cannot exceed B4)              = __9-9-2002__

D. GOOD TIME CREDIT PER PC2931
   1. Date credit applied through (2-15-89
      or date DSL term ends if later)              - __2-15-89__
   2. Days left to serve                           = __4954__
   3. Divide by 3 (round up)                       = __413__    = __1652__
   4. PC Balance (D3 ÷ 4)                           = __413__
   5. BC Balance (D4 x 3)                           = __1239__
=================================================================
E. RECALCULATED MEPD (C2 - D3)                      = __3-2-98__
   1. Add credits lost for CDC 115's after D1       + PC __BC__
   2. Subtract restorations for credit losses in E1 - PC __BC__
   3. New PC/BC Balance                  PC=413 BC=1239
   4. Add any 7 or 9 year MEPD CS Life term(s)      + __0__

F. ADJUSTED MEPD (E + E1 - E2 + E4)                 = __3-2-98__
=================================================================
G. INITIAL PAROLE CONSIDERATION HEARING            = __2/97__
   (13 months prior to F)                             month/year

H. NEXT DOCUMENTATION HEARING   # __2__             = __5/90__
                                                       month/year
=================================================================
Your Minimum Eligible Parole Date has been recalculated pursuant to
In Re Monigold and you ~~have~~ been granted __1584__ days worktime credit
from __6-13-84__ through 2-15-89/the end of your DSL term (circle one).
Your recalculated/adjusted (circle one) MEPD is __3-2-98__. Your initial
life ~~parole~~ consideration hearing will be scheduled during the month
of __2/97__/first available calendar (circle one).

_S. Paris, CCRS_                    _12-2-89_
CASE RECORDS STAFF                    DATE

_CB7286_          _Ceont_            _SQ_
NUMBER            NAME               INSTITUTION
5/89                   FORM A - SIDE 1